S. Warren Lamson, Lorenzo J. Lamson and Sidney S. Date, Partners as Lamson Bros. & Co., v. George D. Boyden, John F. Barrett and Thomas E. Barrett, Partners as Boyden & Co.

1. DURESS—*Does Not Apply to Payments Made on Board of Trade Corners.*—A payment of money upon an illegal or unjust demand, where a party is advised of the facts, can only be considered involuntary when it is made to secure the release of person or property from detention, or

when the payee is armed with apparent authority to seize upon one or the other, and to prevent this, the payment is made.

**Memorandum.**— Assumpsit. In the Superior Court of Cook County; the Hon. GEORGE W. BLANKE, Judge, presiding. Declaration, common counts; plea of the general issue; trial by the court; judgment for defendant; appeal by plaintiff. Heard in this court at the October term, 1894, and affirmed. Opinion filed January 10, 1895.

## STATEMENT OF THE CASE.

This is an action of assumpsit. The declaration contains only the common counts for money had and received.

The case was submitted to the court for trial, without a jury, and upon the plaintiffs' evidence alone. The defendants offered no proof. The court below found the issues for the defendants and gave judgment against the plaintiffs for costs. From this judgment the plaintiffs have appealed to this court.

The plaintiffs' case is predicated upon the proposition that the appellees, by reason of a corner in No. 2 corn for delivery in the month of November, 1889, operated and brought about by them, wrongfully and extortionately forced the appellants, by duress of circumstances and from stress of necessity, to pay to said appellees about $40,000, which *equi et bono* appellees ought not to retain, and for which they are charged as money had and received to appellants' use. Appellants and appellees were members of the board of trade, and doing business thereon in the years 1888 and 1889, and prior and subsequently thereto.

That Lamson Bros. & Co., appellants, had sold to divers members of the said board of trade, including the appellees, about 170,000 bushels of No. 2 corn for delivery during the month of November, 1889, at a price of from thirty to thirty-two cents per bushel, the seller having until the last day of November to deliver the corn so sold.

That the appellants had cribbed in the fall of 1888, in the State of Iowa, about 130,000 bushels of corn, which they had sold for May delivery, 1889, on the said board of trade,

and changed it from May to July, and from July to November delivery. Appellants did not ship that corn in from Iowa and deliver it on said contracts, because it was a wet November. Appellants employed about $100,000 in their business as commission merchants.

That on November 25 and 26, 1889, 1,569,620 bushels of corn were in store and in the city of Chicago. The week ending November 9th, 957,676 bushels; week ending November 16th, 862,222 bushels; week ending November 23d, 826,211 bushels; week ending November 30th, 1,862,000 bushels. This included all corn, No. 2, No. 3, No. 4, of all grades in store.

That the amount of No. 2 corn in store on the 28th of November, 1889, was 669,528 bushels; on the 29th of November, 1889, 757,980 bushels.

That the price of No. 2 corn on the board of trade, on November 27, 1889, was, at the opening of 'Change, thirty-two and five-eighths cents a bushel. The highest price that day was thirty-three and one-fourth cents a bushel. The general range had been, from the 1st of the month up to the 27th of November, 1889, around thirty-two cents a bushel; from thirty-one cents to thirty-two cents. The 28th of November, 1889, was Thanksgiving Day.

That in the forenoon of November 29, 1889, at the opening of 'Change, Thomas Barrett, one of the appellees, was in the corn crowd, buying whenever any corn was offered, without regard to price. He bought forty or fifty thousand bushels from a broker by the name of Logan, at a price higher than the closing price, and continued to bid the market up a cent at a time. Each bid was higher than the previous one. When appellant L. J. Lamson bid for corn, he, Thomas Barrett, would bid a little higher. On that day Barrett bid as high as fifty-five cents a bushel for No. 2 corn for November delivery.

After appellants found that corn could not be bought in the pit, Mr. L. J. Lamson, one of the appellants, while walking toward the end of Exchange Hall, was approached by Mr. Thomas Barrett, who said to him, " What do you want to

do?" Mr. Lamson replied that he wanted to settle their contract with him for November corn, as he, Barrett, had it cornered, and he, Lamson, could do nothing. Lamson said, "The market is nominally forty-five cents; I will give you (Barrett) forty-eight cents, three cents above the market, to settle, as we are cornered and can not get out any other way." Barrett turned and stepped into the crowd and bid the market up to fifty-five cents a bushel. The market for November delivery of No. 2 corn opened on the morning of November 29th at from thirty-three one-half to thirty-four cents a bushel. It was not more than an hour after it opened before Mr. Barrett had bid the market up to fifty-five cents a bushel. It was done very quickly, while Mr. L. J. Lamson, one of the appellants, was still exerting himself to the utmost to buy corn.

. As Mr. Barrett bid it up, Mr. Lamson followed him, trying to get somebody to offer him corn at some price. There was none for sale. It was cornered. He was unable to buy any corn in the pit.

Mr. Lamson did not remember that Mr. Barrett made any reply when he told him that he, Barrett, had cornered the corn market.

When Lamson offered to buy corn of him, Barrett turned away and bid the market up. In an ordinary market one-eighth or one-sixteenth at a time is an advance in the market, but when corn is manipulated, a cent or a half cent a bushel is not unusual.

He, Barrett, called out and said, "I will give fifty-five cents a bushel."

John Barrett bid over the market as much as a cent and one-half. S. W. Lamson, one of the appellants, went to Thomas Barrett to see if he could settle with him for some corn. He, Barrett, told Lamson that he had just settled for some with Mr. Hutchinson at sixty cents, and that he would settle with him at the same price. Lamson offered him fifty-eight cents a bushel.

After some discussion about the price, Barrett told Lamson that he had better buy it then, as it would be about

eighty cents on the morrow unless he did. Then Lamson told him he would take 100,000 bushels of No. 2 corn for November delivery at fifty-eight cents a bushel, and he bought from the appellees that amount at that price. This was on the 29th of November, 1889. The appellant made an effort to buy elsewhere by bidding for the corn, but did not succeed in buying any. The appellees had bought so much that they carried the market up to sixty cents a bushel. The next morning corn opened at fifty-eight or sixty cents. Lamsons bought 20,000 bushels more of appellees at fifty-eight cents a bushel. This 120,000 bushels of corn was paid for by Lamson Bros. & Co., appellants, at fifty-eight cents a bushel, through the Board of Trade Clearing House. They paid the difference between the price that they had sold it for and the price that they had to pay Boyden & Company for it. They paid on November 30, 1889, $31,881.25 on this corn. On December 2d, they paid $6,881.02 on this corn. The market price of corn on December 2, 1889, was about thirty-two cents a bushel. The amount of money so paid by Lamson Bros., was paid under a written protest against the payment of the same. The appellants paid fifty-eight cents a bushel to Boyden & Co. This was paid through the clearing house to Boyden & Co., the appellees. Boyden & Co. collected the difference in the price at which they sold it and Lamson Bros. paid the difference between the price at which they had the corn sold, and the price for which they had it bought.

The court found the issues for the defendants and the plaintiffs prosecute this appeal.

Appellants' Brief, L. H. Bisbee and D. M. Kirton, Attorneys.

Money paid under circumstances in which a reasonably prudent person would pay in order to preserve his property or protect his business interests, may be recovered back, the person paying not owing, and the person receiving not being entitled in equity to receive it. Prichett v. Madison Co., 14 Brad. 454; La Salle County v. Simmons, 5 Gil. 513; Brad-

ford v. Chicago, 25 Ill. 411; Chicago & Alton Ry. v. Chicago & Vermilion Coal Co., 79 Ill. 121; Spaids v. Barrett, 57 Ill. 289; Baltimore v. Lefferman, 4 Gil. (M. D.) 425; Brumagin v. Tillinghast, 18 Cal. 265; Mays v. Cincinnati, 1 Ohio St. 268; Stenton v. Jerome, 54 N. Y. 480; Scholey v. Mumford, 60 N. Y. 498; Harmony v. Bingham, 12 N. Y. 99; Baldwin v. Liverpool & G. W. S. S. Co., 74 N. Y. 125; McPherson v. Cox, 86 N. Y. 472; Heckley v. Headley, 45 Mich. 569; 6 Am. & Eng. Ency. of Law, 59.

"Money paid upon a wrongful demand, to save party from some great or irreparable mischief or damage can be recovered." Corkle v. Maxwell, 3 Blatchf. (U. S.) 413.

In this case the appellants owed appellees nothing, in law or equity, if the defendants obtained the money in consequence of having cornered the market. The statute makes all contracts in furtherance of a corner void. See Starr & Curtis' Statutes, Crim. Code, Sec. 130; Summings v. Foss, 40 Appl. 523; Samuels v. Oliver, 130 Ill. 73.

APPELLEES' BRIEF, FRANCIS A. RIDDLE AND JAMES E. MUNROE, ATTORNEYS.

The action of appellants in purchasing the corn from appellees, and paying therefor, was voluntary, within the meaning of the law; and for this reason, even if it were proven that appellees cornered the market, appellants have no right to recover the money paid by them for the corn in question. Money voluntarily paid can not be recovered. Lange v. Soffell, 33 Ill. App. 624; Elston v. Chicago, 40 Ill. 514; Swanston v. Ijams, 63 Ill. 165.

To constitute duress, or what is the same thing, to render the act of a party involuntary, it must appear that the degree of restraint or coercion to which he was exposed was sufficient to overwhelm a person of ordinary capacity and firmness. The danger must be imminent and impending, or apparently so, and the party alleged to have been coerced must have had no other way of extricating himself from the restraint. Miller v. Miller, 68 Pa. St. 493; Brown v. Pierce, 7 Wall. 214; Radich v. Hutchins, 95 U. S. 213; Youngs v. Simm, 41 Ill. App. 28; Elston v. Chicago, 40 Ill. 514.

It is well settled that money wrongfully demanded by one and paid by another, to release the goods of the payor from unlawful seizure or detention, may be recovered; and it is equally well established, that the wrongful withholding of payment, or wrongful refusal to perform a contract by one party, except upon the other party yielding a right possessed by him, does not constitute duress, so as to avoid the transaction.    Hackley v. Headley, 45 Mich. 569; Silliman v. United States, 101 U. S. 465.

A payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid.    Lange v. Soffell, 31 Ill. App. 625; Youngs v. Simin, 41 Ill. App. 28; 6 Am. & Eng. Enc. of Law, 59; Elston v. City of Chicago, 40 Ill. 514, 518; Swanston v. Ijams, 63 Ill. 165; Radich v. Hutchins, 95 U. S. 213.

In order to make a payment compulsory so as to warrant its recovery back, such a pressure must be brought to bear upon the person paying, as to interfere with the free enjoyment of his rights of person or property.    Thus the levy of an execution issued against A upon the land of B upon a claim that it is liable for the debt, does not constitute duress or compulsion so as to make a payment by B to obtain a release of the levy compulsory or involuntary.    Stover v. Mitchell, 45 Ill. 213.

A threat to withhold payment of a debt, or to refuse performance of a contract, or to do an injury which may be redressed by legal process, is not duress *per minas*.    Miller v. Miller, 68 Pa. St. 486.

Where a party pays an illegal demand with full knowledge of the facts that make it illegal, unless it be to release his person or property from detention, or to prevent an immediate seizure of his person or property, such payment is voluntary and can not be recovered; and the fact that the party paying makes a protest at the time of payment, does not change his right.    Wabaunsee Co. v. Walker, 8 Kan. 431; Wolf v. Marshall, 52 Mo. 167; Murphy v. Creighton, 45 Iowa 179.

Lamson v. Boyden.

The fact that business necessities compel the payment of money, will not alter the voluntary character of the payment. Cable v. Foley, 45 Minn. 421; Custin v. Viroqua, 67 Wis. 314; DeGroff v. Ramsey, 46 Minn. 319; Colgalizer v. Salem, 61 Ind. 445; Emmons v. Scudder, 115 Mass. 367; Westlake v. St. Louis, 77 Mo. 47; McCormick v. Dalton (Kas.), 35 Pac. R., 1113; Emery v. Lowell, 127 Mass. 138; Town of Brazil v. Kress, 55 Ind. 14; Ocean Nav. Co. v. Tappan, 16 Blatch. 296.

Even if appellees acquired the corn which they sold to appellants in execution of the alleged purpose of appellees to corner the market, that fact did not prevent the title to the corn from passing to appellees when they purchased it; and the corn being thus the property of appellees, they could lawfully sell it to appellants at such price as the parties agreed upon. Bishop v. Am. Prev. Co., 51 Ill. App. 417; Greenhood on Public Policy, 48–61; Chicago Milk Ass'n v. Ford, 46 Ill. App. 576; Compton v. Bank, 96 Ill. 301.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

It is urged by appellants that the money received from them by appellees was paid under duress, and it is on account of such alleged duress that appellants seek to recover the amount by them paid.

We do not think that the payments were in either case made under any such duress as the law takes note of. Appellees had not in their possession any property of appellants, nor were the persons of either of the latter in jeopardy or restraint.

In every respect appellants were in as untroubled control of their persons and property as they have ever been. Admitting that, as is contended, a corner in grain existed and had been created by appellees, we do not see that the payment was other than voluntary. The cases cited of the payment of money to obtain goods held for excessive freight charges or to prevent the sale of securities in the possession of a pledgee are not applicable because appellees held nothing belonging to appellants; the money was not paid to ob-

tain a release of property, but in discharge of an obligation. If the demand of appellants was unjust, based upon a corner, the result of illegal transactions, appellants were in a position to resist the demand, with the money demanded in their, appellants', pockets.

If it be urged that appellants feared that if they did not pay to or settle with appellees, they, appellants, would be suspended from the privileges of the board of trade, it is sufficient to say that no proceedings for such suspension were pending, or, so far as appears, threatened. Nor does it appear that appellants might not have successfully resisted an attempt at suspension, had one been made.

A payment of money upon an illegal or unjust demand, when a party is advised of all the facts, can only be considered involuntary when it is made to secure the release of person or property from detention, or when the payee is armed with apparent authority to seize upon one or the other, and to prevent this the payment is made. Lange v. Sofell, 33 Ill. App. 624; Young v. Simms, 41 Ill. App. 28; Hackley v. Headley, 45 Mich. 569; Murphy v. Creighton, 45 Iowa 179–183; Gable v. Foley, 45 Minn. 421; Custin v. Viroqua, 67 Wis. 314; DeGroff v. Ramsey, 46 Minn. 319; Colgalizer v. Salem, 61 Ind. 445; Emmons v. Scudder, 115 Mass. 367; Westlake v. St. Louis, 77 Mo. 47; McCormick v. Dalton (Kas.), 35 Pac. R. 1113; Emery v. Lowell, 127 Mass. 138; Town of Brazil v. Kress, 55 Ind. 14; Ocean Nav. Co. v. Tappan, 16 Blatch. 296.

The view we take of the case renders unnecessary any discussion of the questions presented as to the right to compel production of books and papers.

The judgment of the Superior Court is affirmed.