## Siegel, Cooper & Company v. Henry Schueck et al., for the use of E. A. Prior & Co.

1. DURESS—*Of Servant by Master—Not Presumed.*—There is no such subjection or subserviency by a salaried employe, that the law will imply a transaction by him with his employer, to be voidable on the mere ground that perhaps he would be discharged if he did not assent. Before it can be held that an agreement between master and servant was made under duress the evidence must show that the servant exerted himself and resisted the compulsory influence.

2. MISTAKE OF LAW—*Not Ground for Disturbing a Settlement.*—A mere misapprehension of the law, where one so mistaken has full knowledge of the facts, is no ground for disturbing a settlement of a doubtful claim.

**Transcript**, from justice of the peace. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the October term, 1896. Reversed. Opinion filed December 14, 1896.

A. BINSWANGER, attorney for appellant.

CRATTY BROS., JARVIS & CLEVELAND, attorneys for appellees.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This action, begun originally before a justice of the peace and from there taken by appeal to the Circuit Court, was brought by the appellee against the appellant corporation to recover $40 withheld from the salary of the appellee, who was a salesman in the employment of appellant.

In each court the appellee recovered the amount of his claim, and upon this appeal the question is baldly presented, whether any recovery by him can be sustained.

The circumstances out of which the claim of appellee arose, were briefly as follows:

A woman, known to the appellee, came to him in appellant's store one day after banking hours, and represented that she wished to make a small purchase and needed to

use, in so doing, her check on a bank for forty dollars.    The appellee, having no authority to pass upon checks, accompanied her to the cashier of appellant, who, after making some inquiry of the appellee, " O K'd " the check and handed it back to the woman.    She then went into another department of the store, bought a pair of shoes for $2.50 and received them and $37.50 in cash for the check.

The check was worthless.

So much, we understand, is not questioned.    Concerning what was said by the cashier to the appellee and his reply, there is some difference, but it is not material to notice it, for it is quite plain that whatever was said, it was the cause of the cashier marking the check " O. K.," thereby enabling the woman to use it in the store as cash.

There is considerable contrariety in the versions of what took place between appellee and the cashier after the worthlessness of the check had been ascertained.    But we will accept appellee's testimony upon the material part of such conversation, and what was done as a result of it.    On his direct examination he testified :

" The cashier, Mr. Brennan, said, 'I guess you have got to pay it.'    I said, 'I guess not.'    It went on for a day or two and he said, ' You will have to get the woman arrested.'    I said, ' No, it is your place.'    He said, 'No, that Siegel, Cooper & Co. did not want to get mixed up in it.'    I went and got a warrant to have her arrested, but she could not be found; she skipped the country.    The amount of this check was deducted from my salary without my consent.    Brennan told me he would charge it to me.    I told him I would not pay it; I did not owe it.    A couple of weeks after he said, ' I will make it easy for you, and will charge you $2 a week.'    I said, ' No, I would not do it at all.'    The next week he deducted $2 out of my salary, and kept on until the $40 was paid.    I was discharged a short time ago."

On cross-examination, appellee testified :

" I left the employ of  Siegel, Cooper & Co., in August, 1895.    This affair about this check occurred January 25,

1892. That was the date when the check was made and given. At that time I was employed in the furniture department. * * *

The second interview with Mr. Brennan by me took place in the latter part of the week, * * * and he said he would charge it to me. I said, 'No, you won't.' I then went up stairs. I never saw the check until I demanded it after it was paid; after it was taken out of my wages. I have kept it ever since.

After the warrant was made out I came back from the police station, and told him that Mandel had dropped the suit. Then he asked me if I had ever seen that woman. This was ten or fifteen days later, and I said, 'Yes, I saw her four years ago in Sweet's office as clerk.' I went with her the same as with any lady or gentleman that wants to pay by check.

I was paid every Tuesday, and worked on a salary of $18 a week. After that I got more. After this check was presented by the woman I got my salary, minus $2. I said nothing to Mr. Brennan. This went on from week to week, and I got my salary less $2. This deduction of $2 a week continued for twenty weeks.

Q. Did you ever ask for that $40 after this money was kept out, after you were discharged? Did you ever go back after it?

A. No, sir; I never went and demanded it."

At the conclusion of the evidence, the defendant asked the court to instruct the jury that under the evidence and the law, the plaintiff was not entitled to recover, which the court refused to do.

We think it was error by the court to refuse to give the instruction.

Here, the appellee, though not expressly assenting, in terms, to the withholding from his salary of two dollars every week for a period of twenty weeks, in no manner dissented from it being done, except by saying, "I guess not," or, "No, you won't," in response to the cashier's statement that he should withhold it from his salary, and

by saying that he would not pay it at all, in response to the cashier's statement that he would make it easy for him and take it out in such weekly installments.

There was no sufficient element of duress in the transaction to avoid it.   Lamson v. Boyden, 57 Ill. App. 232.

We are not prepared to hold that there is any such subjection or subserviency by a salaried employe in a mercantile establishment, as that the law will imply a transaction by him with his employer to be voidable on the mere ground that perhaps he would be discharged from his employment if he did not assent to whatever might be demanded of him. In this case there was no evidence of threats made by the employer, or by the cashier, or of fear by the appellee, and we certainly will not imply a disastrous result where there was no evidence that the cashier possessed any authority either of discharge or of employment, and where no appeal was made or attempted to be made to the appellant, appellee's employer.   There is no evidence that the cashier was in any sense the superior of the appellee in employment, and it would be to carry the doctrine of coercion or duress beyond any limits we have any knowledge of, to apply the doctrine applicable in cases of duress or coercion, to a case like this.

Before we could consider whether an agreement made under duress of wages, or employment, might be avoided, it would have to appear affirmatively that the person thus circumstanced had exerted himself and resisted the compulsory influence, whatever it was.   Spaids v. Barrett, 57 Ill. 289 (p. 292).

But here we discover nothing of the kind; not even an appeal to the employer or to one empowered to act for him. On the other hand, there is absolutely tame submission, not even amounting to protest, except by a dissent from the proposed action in advance of its being taken, for not alone the twenty weeks required in which to make up the lost sum, but for more than three years after the sum had been thus made good.

If it be said that the appellee permitted the two dollars a

week to be withheld under a mistaken apprehension as to his legal liability to make good the sum lost, that is no excuse.

A mere misapprehension of the law, where one so mistaken has full knowledge of the facts, is no ground for disturbing a settlement of a doubtful claim. Percy v. Hollister, 66 Ill. App. 594.

It is argued by appellee that his promise, if one were made, was void, because not in writing. We can not, under the facts of the case, assume that this was a promise by appellee to pay the debt of another, but if it were, we know of no authority which permits one who has verbally promised to pay the debt of another, and has in pursuance of such promise gone on and paid it, to recover back money so paid, and we have no hesitation in saying that he could not.

Under the facts of the case, we hold that no recovery can be had, and the judgment of the Circuit Court is reversed, without remanding the cause.