COMMONWEALTH *vs.* DANIEL E. PAGE, JR., & another.

Suffolk.     November 23, 1891. — January 6, 1892.

Present: ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Hackney Carriage — Regulations of Board of Police.*

The term "hackney carriage" in Rule 55 of the board of police of the city of Boston, which provides among other things that "every vehicle used, or to be used, for the conveyance of persons for hire from place to place within said city, except a horse-car, shall be deemed a hackney carriage," and that "no person shall set up and use or have charge of any hackney carriage, unless he is licensed thereto by the board of police," is not confined to a public carriage having a stand in the public street; but applies to a carriage used for the conveyance of passengers for hire within the city, whether the vehicle stands in a public place or in the stable of its owner.

The rule so construed is a reasonable exercise of the authority conferred upon the board of police by the act establishing it, and by the ordinances of the city of Boston.

COMPLAINT for setting up and using a hackney carriage for the conveyance of persons for hire from place to place within the city of Boston without a license from the board of police. At the trial in the Superior Court, before *Barker,* J., the following facts were agreed.

The defendants, Page and Harris, are partners, and carry on a hack, boarding, and livery stable at 783 and 785 Tremont Street, in Boston. Their business consists in letting teams for hire, and in furnishing board for teams belonging to other persons. They had no stand for any of their carriages in the streets of the city of Boston, and never, by themselves or their agents, solicited patronage in the streets or elsewhere, except at their stable, nor did the drivers of their carriages ever accept orders in the streets, or elsewhere outside of the stables of the defendants, and no carriages were ever let except upon orders left at the stable. The defendants at the time of the complaint had no licenses for any of their carriages from the board of police. On April 11, 1890, Joseph P. Glancy, a police officer of the city of Boston, in citizen's clothes, went to the stable of the defendants and left an order for a carriage to call at the Hotel Worcester, and convey two persons from there to a railroad station. At the hour named, the defendants' servants

harnessed a horse into the defendants' coupé, and one of the defendants' servants was directed to drive the coupé to the hotel and convey the persons mentioned by Glancy to the station. This was done, and upon the arrival of the coupé at the station, Glancy, who was one of the two passengers carried, paid the driver one dollar. The carriage, horse, and harness were the property of the defendants; the person receiving the order and harnessing the horse, and the driver of the carriage, were both in the employ of the defendants, and were acting in the usual and ordinary scope of their employment.

At the time of the complaint in this case, the carriages owned by the defendants, and which they were accustomed to let, were hacks, victorias, carryalls, Goddard buggies, landaus, a coupé, a phaeton buggy, a light open wagon, a two-seated wagon, and sleighs for the winter time. It was the custom of the defendants never to let their hacks, landaus, victorias, or coupé to any person without sending a driver with them; all the other carriages owned by them they were accustomed to let either with or without furnishing a driver. The defendants were also accustomed to furnish drivers for those persons boarding teams at their stable. They were accustomed to let their carriages by the hour or by the day only. It was the general custom of persons hiring carriages at the time of the complaint not to pay the drivers of the carriages, but, as a rule, to pay their bills at the stable of the defendants, and the business of the defendants was mostly a credit business.

By the third section of Rule 55 of the board of police of the city of Boston, relating to hackney carriages, it was provided that "every vehicle used, or to be used, for the conveyance of persons for hire from place to place within said city, except a horse-car, shall be deemed a hackney carriage within the meaning of these rules"; and by the fourth section it was provided that "no person shall set up and use or have charge of any hackney carriage, unless he is licensed thereto by the board of police."

Upon the foregoing facts, the defendants requested the judge to rule that, as matter of law, they were not guilty of the offence charged in the complaint, which ruling was refused; and the defendants excepted.

The defendants further requested the judge to rule that the board of police of Boston, upon said agreed facts, had no authority to require the defendants to obtain a license for their carriages, or any of them, and that if the defendants were required by such rules and regulations to obtain a license for any of their said carriages, or for said coupé, such rules and regulations were to that extent unauthorized and void, which ruling the judge refused to give; and the defendants excepted.

The judge further ruled that, as matter of law, upon said agreed facts, the defendants were guilty, and directed the jury, against the objection and under the exception of the defendants, to return a verdict of guilty; which the jury thereupon did.

After such verdict, at the request of the defendants, the judge reported the case to the full court for its determination. If there was no error in the aforesaid rulings and directions, the verdict was to stand; otherwise, to be set aside.

*F. E. Snow,* (*P. B. Smith, Jr.,* with him,) for the defendants.

*A. E. Pillsbury,* Attorney General, ( *G. C. Travis,* First Assistant Attorney General, with him,) for the Commonwealth.

LATHROP, J. The Pub. Sts. c. 28, § 25, provide that " the mayor and aldermen of a city may make rules and orders for the regulation of all carriages and vehicles used either wholly or in part therein, whether with or without animal power, with penalties for violations thereof, not exceeding twenty dollars for one offence; and may receive annually one dollar and no more for each license granted by them to a person to set up and use any carriage or vehicle within such city." It is further provided by the same section that " this section shall not impair the right of a city to make by-laws relating to the subject." This is a re-enactment of the Gen. Sts. c. 19, § 14.

The St. of 1878, c. 244, provided for the establishment of a board of police commissioners in the city of Boston, and § 2 enacted that " said board may also be empowered by the city council to exercise all or any of the powers conferred by the statutes of the Commonwealth upon the board of aldermen, the city council, or the city of Boston, in relation to licensing, regulating, and restraining . . . carriages, wagons, and other vehicles."

The St. of 1885, c. 323, establishes a board of police for the

city of Boston; and § 2 enacts that "all the powers now vested in the board of police commissioners in said city of Boston, by the statutes of the Commonwealth or by the ordinances, by-laws, rules, and regulations of said city, except as otherwise hereby provided, are hereby conferred upon and vested in said board of police."

The Revised Ordinances of Boston of 1885, c. 26, § 1, provide that "the board of police shall have and exercise all the powers conferred by the statutes of the Commonwealth and the ordinances of the city upon the board of aldermen, or upon the mayor and aldermen, in relation to licensing, regulating, and restraining . . . carriages, wagons, and other vehicles."

On January 31, 1889, the board of police of the city of Boston adopted certain rules and regulations relating to hackney carriages. Section 3 of Rule 55 provides that "every vehicle used, or to be used, for the conveyance of persons for hire from place to place within said city, except a horse-car, shall be deemed a hackney carriage within the meaning of these rules." Section 4 provides that "no person shall set up and use or have charge of any hackney carriage, unless he is licensed thereto by the board of police."

That the Legislature has the constitutional right to authorize the city council to empower the board of police to make rules and regulations respecting the use of the streets of Boston was decided by this court in *Commonwealth* v. *Plaisted*, 148 Mass. 375, 383. The same case also decided that, under a power to regulate, the power to require a license to be taken out is free from legal objection.

The defendants first contend that Rule 55 of the board of police does not apply to carriages used as the defendants used their carriages; and that the term "hackney carriage" is confined to a public carriage having a stand in the public streets. This, we are of opinion, is too narrow a construction of the rule. The definition in § 3 is certainly broad enough to cover the defendants' case. The defendants, however, rely upon other sections of the rule, which they contend limit the meaning of §§ 3, 4, and confine their application to carriages having stands in the public streets. Thus, § 1 states that the board of police "will assign places as stands for such carriages," and § 2 pro-

vides that " the board will assign to every person licensed to set up and use a hackney carriage a place as a stand for such licensed carriage." These two sections do not necessarily imply that the stand is to be in a public place, although we have no doubt that some of the other sections relate exclusively to those carriages which have stands in public places. See § 7, last paragraph, and §§ 8, 10.

The rule is doubtless intended to cover the case of all persons setting up, using, or having charge of a vehicle used for the conveyance of persons for hire within the city, whether the vehicle stands in a public place or in the stable of its owner. In addition to the provisions of § 3 and the first part of § 4, which we have already cited, § 4 also requires every hackney carriage to have a lamp on each side, to be kept lighted at night; § 6 requires a copy of the license and of the rates of fare to be carried, and provides for the punishment of a passenger refusing to pay fare. See also §§ 7, 9, and 11, which are general in their character.

In *Commonwealth* v. *Duane*, 98 Mass. 1, a complaint was made against the defendant, who had charge of a hackney carriage, for demanding, on May 18, 1865, a greater rate of fare than was prescribed by an ordinance of the city. It appeared that the defendant was the driver of one of several licensed hackney carriages kept by one Abbott, at a stable on Myrtle Street in Boston, in the office of which there was a register in which persons desiring transportation recorded their names, and the times when and the places where they desired carriages to be sent for them; that the name of a lady was entered on the register with such specifications, and the defendant was sent with a carriage for her at the time and to the place designated, where he made a contract for her transportation at a higher rate of fare than that allowed by the ordinance. The defendant contended that there was no obligation on him to perform the service; that the ordinance did not apply to prevent him from making a special contract; and that, if it did, it was unreasonable and void. The report of the case does not state the date of the ordinance, but it was doubtless that found in the Revised Laws and Ordinances of 1863; and it is to be noticed that the rules and orders of the board of aldermen therein contained, on

page 97, give a definition of the term "hackney carriage" similar to that contained in § 3 of Rule 55, and contain a provision as to a license similar to that contained in § 4.

These facts give peculiar significance to the language of Chief Justice Bigelow, in the judgment of the court overruling the defendant's exceptions: " The service which he undertook to render to the prosecutor was clearly within the terms of the city ordinance prescribing a fixed rate of fare for the conveyance of a single passenger within the limits of the city. . . . It was manifestly designed to regulate the entire trade or business to which it relates, and not to be applicable to a few cases only, or a particular branch of the business."

The defendants further contend that, if Rule 55 applies to them, it is unreasonable, and so not within the power of the board of police to pass.   The rule in question is very similar to those which have for a long time been in force in the city of Boston.   See Rules and Orders of the Board of Aldermen, of June 27, 1855, contained in the Revised Laws and Ordinances of Boston (ed. 1863), pp. 97 *& seq.;* Revised Laws and Ordinances of Boston (ed. 1869), Hackney Carriages.   In *Commonwealth* v. *Gage*, 114 Mass. 328, Chief Justice Gray, speaking of the regulations in the edition of 1869, said: " These regulations are a reasonable exercise of the authority conferred upon the mayor and aldermen by the Gen. Sts. c. 19, § 14.   They are manifestly intended to secure the use of suitable hackney carriages and the services of competent drivers for the accommodation of public travel within the city, at the rates of fare thereby established."   See also *Commonwealth* v. *Worcester*, 3 Pick. 462. *Commonwealth* v. *Stodder*, 2 Cush. 562.   *Commonwealth* v. *Matthews*, 122 Mass. 60.

It has been suggested that the provision of § 6 of Rule 55, that " every person having charge of a hackney carriage . . . shall not refuse to carry any passenger lawfully entitled to be carried in a hackney carriage, unless previously engaged," declares, in effect, every person setting up and using or having charge of a hackney carriage to be a common carrier; and that such a provision is unreasonable when applied to persons carrying on business in the way the defendants carried on their business. The language of this provision is carefully guarded.   It is, "any

passenger lawfully entitled to be carried in a hackney carriage." No attempt is made to define who is lawfully entitled to be carried. It is to be noticed that no similar provision is to be found in the Revised Ordinances of 1863. In those of 1869, the only provision on the subject is this: "And for refusing to carry any passenger from any railroad station or steamboat landing to any point within the city, the owner, driver, or other person having charge of such hackney carriage, shall be subject to" a penalty.

It is unnecessary in this case to determine either the meaning or the effect of the clause above cited from § 6. A similar question was raised in *Commonwealth* v. *Duane*, *ubi supra*, and the language of the court in that case is applicable here: "Admitting that he [the defendant] might have refused to render the service at all without receiving a larger compensation than that prescribed by the ordinance, on which point we give no opinion, he could not demand a higher rate after he had undertaken to convey the prosecutor, and she had entered or begun to enter his carriage."

In the case at bar, the defendants undertook, in addition to their other business, to carry passengers from place to place in the city. We are of opinion that § 4 of Rule 55, which requires them to have a license, is applicable to them, and that it is a reasonable regulation.                      *Verdict to stand.*