AUSTIN MORLEY & others *vs.* POLICE COMMISSIONER OF THE CITY OF BOSTON.

Suffolk. October 13, 1927.— November 22, 1927.

Present: BRALEY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Hackney Carriage. Taxicab. Boston,* Police commissioner. *License. Constitutional Law,* Police power, Equal protection of law, Due process of law. *Equity Jurisdiction,* To enjoin revocation of license. *Certiorari.*

The right to engage in the business of carrying passengers for hire upon public ways in a taxicab is subject to reasonable regulation and control, and those engaging therein may be required to be licensed.

The holder of such a license takes it subject to limitations therein stated if they are not arbitrary nor unreasonable, including the right of suspension and revocation authorized by statute.

If the owner of a hackney carriage, to whom, "on condition that the licensee shall comply with all the existing Laws and Ordinances relating to Hackney Carriages, and all rules made for the regulation of the same," had been issued a license by the police commissioner of the city of Boston to drive the carriage within the city limits and "to set up and use" the carriage at a special stand, refuses to occupy the designated stand, the commissioner, under St. 1909, c. 221, and Rule 58 of the rules and regulations of the Boston police department, has power and authority to suspend the license; and such suspension is not an arbitrary, but is a reasonable, exercise of such power.

The refusal by the licensee to occupy such a special stand is not justified by the fact that it produces little business, is unprofitable, and serves no public interest, while a private stand, which he had chosen to occupy, was profitable and served a public interest.

In the absence of bad faith, conclusions of fact by the police commissioner of Boston within his jurisdiction in matters of licenses and regulations relating to the transportation of passengers for hire upon the streets of Boston cannot be controverted in a suit in equity to enjoin the enforcement of an order respecting such licenses and regulations.

Proceedings by the police commissioner of Boston in excess of jurisdiction or on erroneous principles of law may be corrected by petition for writ of certiorari, and, in some cases, by petition for writ of mandamus requiring him to take specific action, and such remedy at law is adequate and complete, so that, in the absence of bad faith on the part of the commissioner, a bill in equity to enjoin such proceedings by him cannot be maintained.

The mere facts, that the order of the police commissioner of Boston suspending the license in the circumstances above described operated to the profit and benefit of two corporations, which were competitors of the plaintiff and of an association to which he belonged and for whose benefit and in whose behalf he purported to bring his bill, and were injurious to him and the association without serving any public purpose, in the absence of bad faith on the part of the commissioner were not sufficient to warrant the maintaining of a suit in equity to enjoin the commissioner's action as a violation of the rights of the plaintiff under either the Constitution of this Commonwealth or the Fourteenth Amendment to the Federal Constitution, a complete and adequate remedy at law being available to the plaintiff.

It not appearing that the police commissioner knew of the conduct of the plaintiff's competitors or intended by the action taken against the plaintiff to discriminate against him or to favor his competitors, nor that he was not intending to proceed against other violators when it should appear that he was justified in so doing, the mere fact that he had not taken action against the competitors of the plaintiff was not shown to be an unlawful discrimination on his part in depriving the plaintiff of the equal protection of the law in violation of the Fourteenth Amendment to the Federal Constitution, and furnished no ground for maintaining the suit in equity.

The acts of the police commissioner above described were not and could not be found to be arbitrary or capricious or in violation of any consti-

tutional right of the plaintiff either because of the terms of the statute and rules or because of the manner in which the defendant was acting under the authority conferred upon him.

BILL IN EQUITY, filed in the Superior Court on April 22, 1927, by six residents of the city of Boston, each "engaged in the business of driving for hire and for the use of the public a taxicab in Boston," the plaintiffs alleging that they were "members of a voluntary, unincorporated association known as the Independent Taxi Operators Association, of which there are about four hundred members, composed of persons all of whom are engaged in said business," and each of whom owned and operated his own taxicab, and that the members of the association were "in active competition with others engaged in the same business, particularly two corporations known as the Checker Taxi Company and the Town Taxi Company, each owning a large number of taxicabs and employing drivers and operating in the city of Boston." The plaintiffs alleged, also, that they brought the bill on their own behalf and on behalf of all other members of their association who were similarly interested, and who " may join as parties plaintiff in this bill and contribute to the expense of this proceeding."

Further allegations of the bill were that the police commissioner of Boston assigned to the plaintiffs special stand licenses, while their competitors were given licenses of another character, and continued: "The special stands assigned to each of the six plaintiffs as hereinbefore set out are at places where there is little or no public demand for taxicabs and no public convenience or purpose is served by the same, and the plaintiffs are unable to make a living or to transact business at any profit whatever by using said special stands; and this is true of the great majority of the special stands granted by the defendant police commissioner to other members of said association. In order to enable the members of said association to whom have been assigned such unprofitable special stands to transact business at a profit and to make a living by so doing, said association has obtained from the owners of several private properties in the city of Boston, not public streets or public places, certain

licenses, leases and rights to occupy said private properties with taxicabs belonging to members of said association including the six plaintiffs, and said properties are hereinafter referred to as private stands and are without the control and jurisdiction of the defendant, and the occupation thereof by the six plaintiffs and other members of said association is in conformity with and not in violation of said rules and regulations and is not in violation of any valid law affecting the same or otherwise unlawful. The method by which the six plaintiffs and other members of said association similarly situated have occupied and used said private stands is to return thereto after the completion of a business trip and to wait in said private stand with their taxicabs for a telephone call for further business. Such use of said private stands serves the public interest and convenience as well as the interest of the plaintiffs and other members of said association and is in no wise detrimental to the public interest or convenience. Said association has invested large sums of money in said private stands, and the use of the same by the plaintiffs and other members of the said association similarly situated has greatly increased the business and profits of the plaintiffs and said other members of said association, and has enabled them to build up a large and prosperous business."

As to the causes alleged by the defendant for suspending the plaintiffs' licenses, set out in the opinion, the plaintiff alleged: "Notwithstanding the enumeration of several reasons in said notices, the sole and only reason that actuated the defendant in issuing said notices was that the plaintiffs and each of them when ordered by a police officer acting under the defendant's directions to leave said private stands and go with their taxicabs to the special stands assigned to them respectively and remain there until engaged by some member of the public for a trip had refused so to do on the ground that the defendant had no right under said rules and regulations or otherwise and under the circumstances set out in this bill to compel the plaintiffs to leave said private stands or to occupy said unprofitable special stands. None of the plaintiffs had done or committed any other act or thing which was or was deemed by the defendant to be a violation

of said rules and regulations except the refusal to obey the aforesaid order. The defendant at the time of the issuance and service of said notices threatened and now intends unless the plaintiffs and other members of said association similarly situated abandon the use of said private stands and transact their business from said unprofitable special stands permanently to revoke all three of the licenses granted to the plaintiffs and to others similarly situated as aforesaid, and to put the plaintiffs and said others permanently out of said business. Said notice of suspension, if carried out, will inflict great and irreparable damage upon each of the six plaintiffs in respect of the first two of said licenses but not of the special stand license, for which there is no adequate remedy at law, and if said threat is carried out still further loss and damage will be inflicted upon each of the six plaintiffs.

"The plaintiffs are informed and believe and therefore allege that each of said two corporations, the Checker Taxi Company and the Town Taxi Company, has for a long time been operating its taxicabs from private stands precisely as said association has done and is endeavoring to do, and the defendant has not taken any steps to prevent the same in the case of said two corporations. The action of the defendant in issuing said notices and making said threats is arbitrary and capricious, and, whatever its purpose, operates to prefer and benefit said two corporations as the competitors of the plaintiffs at the expense of the plaintiffs and other members of their said association, is seriously injurious to the plaintiffs without serving any public convenience, is not authorized by law, and is in violation of the rights of the plaintiffs both under the Constitution of this Commonwealth and under the Fourteenth Amendment to the Constitution of the United States."

The prayers of the bill were that the defendant be enjoined from enforcing his order, described in the opinion, "suspending the license of each of them to drive a hackney carriage in the city of Boston and the set-up license of each of them, and from carrying out his threat to revoke in the case of any one of the plaintiffs the license to drive a hackney carriage in the city of Boston and the so called set-up license

merely for the reason that the plaintiffs are using private stands and declining to obey the defendant's order to abandon said private stands and use their special stands when not actually engaged in the transporting of passengers for hire"; and that he also be enjoined "from requiring or compelling or attempting to require or to compel the plaintiffs, or any of them, so long as they comply with all applicable provisions of law and of the rules and regulations of the police department of the city of Boston, to abandon or discontinue the use of private stands in the city of Boston, and to use unprofitable special stands assigned to them by the defendant and not required by the public convenience, and from suspending or revoking the licenses of the plaintiffs or any of them to drive taxicabs in the city of Boston and their so called set-up licenses solely for the cause that the plaintiffs, or any of them, have refused to abandon or discontinue the use of private stands and to use special stands not required for the public convenience."

The defendant demurred on fourteen grounds, one of which was want of equity.

The demurrer was heard by *Lummus*, J., who ordered the entry of an interlocutory decree overruling it, and, being of opinion that the correctness of such ruling ought to be determined by this court before further proceedings in the Superior Court, reported the suit for that purpose.

The case was submitted on briefs.

*W. G. Thompson & W. P. Murray*, for the plaintiffs.

*H. Parker*, for the defendant.

SANDERSON, J.    The plaintiffs bring this bill in equity for themselves and any others having a like interest who may join therein, to restrain the defendant from suspending or revoking licenses held by them for the operation of taxicabs in the city of Boston.    The case comes to this court on report by the trial judge after overruling the defendant's demurrer.

The defendant, as police commissioner of the city of Boston, upon petition of each plaintiff, issued a license to drive a hackney carriage within the city limits, a license "to set up and use one Hackney Carriage" at a designated garage "on condition that the licensee shall comply with

all the existing Laws and Ordinances relating to Hackney Carriages, and all rules made for the regulation of the same," and an order designating a special stand for each hackney carriage, which order also contained the condition above quoted. While the licenses and orders were in force, the defendant notified each of the plaintiffs that his license to drive and to set up and use a hackney carriage and his license for a special stand were suspended and made inoperative from the date of the notice for the period of three days, for reasons deemed satisfactory to the defendant, namely, "For the reason that the . . . suspensions are required for the maintenance and better promotion of public convenience, in the use of the public ways, and in the operation and regulation of hackney carriages and taxis operated for hire in the City of Boston: For the reason that you have refused to comply with the authorized orders of police officers of the City of Boston, respecting and requiring compliance by you with the obligations and terms of said licenses heretofore issued to you for driving and operating hackney carriages: For the reason that you have refused and neglected to maintain service and use of 'special stand' assigned to you for the public convenience, and described in your said license therefor: For the reason that your refusal to observe requirements and conditions of your said licenses, and your refusal to obey lawful orders and directions of Police Officers of the City of Boston, renders you, in the judgment of the Police Commissioner, an unfit person to further exercise any privileges or benefits under authority of any of said licenses."

Under Rule 58 of the rules and regulations of the Boston police department, the authority to issue to suitable persons licenses of the kinds above referred to and to make assignments of special stands is given to the police commissioner. Provision is also made forbidding trespassing by owners or drivers upon special stands to which they have not been assigned, and forbidding those having special stands from trespassing upon public stands. While awaiting employment by passengers, drivers are forbidden to stand their carriages in any public street or place other than at or upon a public or special stand. Every person having charge of a

hackney carriage is required to obey the directions of any police officer respecting the standing of such carriage while waiting for passengers. The licensees are prohibited from carrying any person sick or affected with any contagious disease. It is made the duty of police officers to observe the movements of hackney carriages, especially at night, and at all times to see that the rules regulating such carriages are obeyed. In these rules and regulations the police commissioner reserves to himself the right to take away, change, modify, or reassign any and all privileges in both special and public stands at his discretion.

By St. 1909, c. 221, entitled "An Act to authorize the police commissioner of the city of Boston to revoke or to suspend licenses issued by him," that officer was given all the powers and duties then conferred or imposed by law upon the board of police of the city of Boston, and he was specifically given all the powers of that board in respect to revoking licenses issued by him, and in addition he "may, in his discretion, for any cause deemed satisfactory to him and without a hearing, suspend and make inoperative for such period as he may deem proper any license issued by him."

The grounds of demurrer are in part that there are no sufficient allegations in the bill to entitle the plaintiffs to relief in equity as prayed for, and that it appears from the allegations that the defendant acted within and pursuant to the power and authority conferred upon him.

The right to engage in the business of carrying people for hire upon public ways is subject to reasonable control. *Commonwealth* v. *Gage,* 114 Mass. 328, 330. *Commonwealth* v. *Page,* 155 Mass. 227. *Burgess* v. *Mayor & Aldermen of Brockton,* 235 Mass. 95. *Commonwealth* v. *O'Neil,* 233 Mass. 535, 542. See *Commonwealth* v. *Morrison,* 197 Mass. 199, 203.

The police commissioner had authority to make rules and regulations concerning this business. *Commonwealth* v. *Gage, supra. Commonwealth* v. *Plaisted,* 148 Mass. 375, 382. *Commonwealth* v. *Page, supra.*

The power to regulate the business gives the power to require those engaged in it to be licensed. The holder of a

license cannot complain of limitations attaching to the privilege which, with full knowledge, he sought and accepted. *McAuliffe* v. *Mayor & Aldermen of New Bedford,* 155 Mass. 216, 220. The holder takes it subject to the right of suspension and revocation authorized by statute, *Rafferty* v. *Police Commissioner of Boston,* 259 Mass. 145, and subject to the rules and regulations and to the express conditions made a part of the license. *Burgess* v. *Mayor & Aldermen of Brockton, supra.* The cases cited support the conclusion that the right given the police commissioner to regulate and license the transportation of passengers for hire is a valid exercise of the police power and is constitutional. Licenses such as the plaintiffs have are "mere privilege[s] or permission[s] and in no sense a contract or property." *Burgess* v. *Mayor & Aldermen of Brockton, supra,* page 100.

The designation of stands for carriages licensed to transport passengers for hire would be a useless ceremony unless the drivers were required to operate from the stands designated. It well may be that the distribution of such stands in different parts of the city best serves the public convenience even though in certain cases the stands prove to be unprofitable to the licensees. This method of controlling and distributing the taxicab business may have a tendency to prevent congestion in street traffic at certain points, and if the licensees conduct their business from stands assigned, the police have a better opportunity to learn whether the conveyances are used for illegal purposes and whether the conditions of the licenses are being observed. The designation of stands and the requirement that licensees maintain service at them are justified for reasons based on the public welfare and convenience. The defendant by his orders of suspension is not undertaking to control the use which may be made of the private property upon which the plaintiffs have been maintaining their stands, but only acting within the limits of his authority to control the taxicab business. The designation of stands is one of the three licenses required, and it is within the power of the defendant to suspend or revoke all licenses of the driver who refuses to occupy a designated stand.

The bill states that the licensees refused to occupy the special stands assigned to them and occupied with their vehicles private stands in violation of the orders of police officers acting under the direction of the police commissioner; and that such refusal was the sole and only reason for the action of the defendant, although other reasons were stated in the order. The refusal of the plaintiffs to occupy stands assigned to them was sufficient justification for the suspension of the licenses, and the action of the police commissioner based upon this refusal was not arbitrary but a reasonable exercise of his power. It is no justification for refusing to occupy the stand assigned for the licensee to offer to show that it produces little business, is unprofitable, and serves no public interest, while the private stand, which each plaintiff has chosen to occupy, is profitable and serves the public interest. The statute has clothed the defendant with power to revoke and suspend licenses issued by him, and in the assignment of stands he has the sole responsibility of deciding what the public interest requires. His conclusions in matters of fact within his jurisdiction cannot be controverted in the absence of bad faith. *Tewksbury* v. *County Commissioners*, 117 Mass. 563, 564. *Filoon* v. *City Council of Brockton*, 252 Mass. 218, 223. The Legislature evidently has considered the police commissioner a more appropriate tribunal to decide questions of fact, in matters of licenses and regulations relating to the transportation of passengers for hire upon the streets of Boston, than a court or jury. See *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 213; *French* v. *Jones*, 191 Mass. 522, 532.

If a public officer, whether amenable to a writ of certiorari or not, is about to take action under an unconstitutional or void statute, ordinance or regulation, in a matter which would cause irreparable injury to property rights, a bill in equity may be maintained to enjoin such action, but if the bill cannot be supported on that ground, the plaintiff is not entitled to have the question — whether his business is conducted in violation of law — decided in advance by a court of equity. *Shuman* v. *Gilbert*, 229 Mass. 225. *Greene*

v. *Mayor of Fitchburg*, 219 Mass. 121.   *Commonwealth* v.
*Norman*, 249 Mass. 123, 130, 131.   *Davis* v. *Board of Regis-
tration in Medicine*, 251 Mass. 283, 284.   For reasons already
stated, the constitutionality of the statute and of the rules
and regulations under which the defendant acted cannot be
doubted.

The plaintiffs contend that a petition for writ of certiorari
against the defendant, if an appropriate remedy, would not
be adequate to enable them to raise the questions which they
seek to present, because in such proceedings the return of the
defendant cannot be contradicted; and they urge this as a
justification for proceeding in equity.   This contention
cannot be maintained.   Proceedings in excess of jurisdiction
or on erroneous principles of law by public officers constitut-
ing *quasi* judicial tribunals may be corrected by petition for
writ of certiorari, and, in some cases, by petition for writ
of mandamus requiring them to take specific action.   *Money-
weight Scale Co.* v. *McBride*, 199 Mass. 503, 505.   *Farming-
ton River Water Power Co.* v. *County Commissioners, supra,*
page 214.   *Locke* v. *Selectmen of Lexington*, 122 Mass. 290.
*Warner* v. *Mayor of Taunton*, 253 Mass. 116, 117, 118.   If
it be assumed that such a petition could be maintained
against the defendant, the remedy thereby furnished would
be adequate for the correction of errors of law.   Upon such
a petition the facts and rulings so far as necessary to raise
the questions which the petitioners desire to have revised
by the court must be stated, and "the rights of all persons
have a sufficient protection, in being intrusted to public
officers, clothed with important public duties, who are under
oath for their faithful performance, and who cannot be
supposed to have any interest or bias to misrepresent or
suppress the actual facts as they took place before them."
*Tewksbury* v. *County Commissioners, supra,* page 565.

Bad faith is not charged, but it is alleged that two com-
peting companies have been operating taxicabs from private
stands precisely as the association to which the plaintiffs
belong has done, and is endeavoring to do; that the defendant
has taken no action to prevent the same; and that the issuing
of the notices and the threats made by the defendant are

arbitrary and capricious and, whatever their purpose, operated to prefer and benefit the two corporations as competitors of the plaintiffs at the expense of the plaintiffs and of their association, are injurious to the plaintiffs without serving any public convenience, are not authorized by law and are in violation of the rights of the plaintiffs, both under the Constitution of this Commonwealth and under the Fourteenth Amendment to the Constitution of the United States. Upon the facts alleged, for reasons already stated, it is not open to the plaintiffs to prove that the orders of the defendant, suspending the plaintiffs' licenses for violation of the conditions upon which they were granted, caused injury to them without serving any public convenience.

The remaining question for consideration, in connection with the constitutional question sought to be raised, is, whether the alleged acts of the defendant in issuing the orders for suspension and threatening to revoke the licenses for the reasons alleged without taking action against two of their competitors, are, or could be found to be, arbitrary and capricious and an invasion of the plaintiffs' constitutional rights. It is no defence for a person who has violated the law to show that other violations have not been prosecuted; and, upon the allegations, it does not appear that the defendant knew of the conduct of the plaintiffs' competitors or intended by the action taken against the plaintiffs to discriminate against them or to favor their competitors, nor that he is not intending to proceed against other violators when it appears that he is justified in so doing. If he intends to enforce the conditions of the licenses he must begin with some one. The allegations would not justify the issuance of an injunction on the ground that the defendant, by his failure to proceed against other violators of the law relating to hackney carriages, had deprived the plaintiffs of the equal protection of the law under the Fourteenth Amendment to the Constitution of the United States. The discrimination against a class in the issuance of licenses as disclosed by the facts in *Yick Wo* v. *Hopkins*, 118 U. S. 356, makes that decision inapplicable to the facts stated in the plaintiffs' bill of complaint.

The general allegation of arbitrary and capricious conduct states merely a legal conclusion. *Silberschein* v. *United States*, 266 U. S. 221, 225. Upon the material facts alleged, it does not appear that the acts of the defendant are or could be found to be arbitrary or capricious or that any constitutional rights of the plaintiffs have been invaded either because of the terms of the statute and rules or because of the manner in which the defendant is acting under the authority conferred upon him.

In so far as the allegations relating to the intention of the defendant to follow his order for suspension of the licenses by an order for their revocation are concerned, it is clear that equity has no jurisdiction to take from a public officer the duty of deciding questions committed to him for decision. *Moneyweight Scale Co.* v. *McBride*, 199 Mass. 503, 505.

Upon the material allegations in the bill, the defendant, in issuing his orders suspending the licenses of the plaintiffs, was acting within and pursuant to the power conferred upon him, and the plaintiffs have shown no right to equitable relief. The conclusion here reached makes it unnecessary to consider the other grounds of demurrer.

*Demurrer sustained.*