LOUIS HERSCH *vs.* POLICE COMMISSIONER OF BOSTON.

Suffolk.   January 9, 1946. — April 9, 1946.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Taxicab.   License.   Boston.   Statute*, Repeal.

The authority of the police commissioner of Boston to revoke a taxicab license under St. 1906, c. 291, § 10, as amended by St. 1909, c. 221, was not affected by St. 1930, c. 392, as amended by St. 1934, c. 280.

PETITION for a writ of certiorari, filed in the Superior Court on August 29, 1945.

The case was heard by *Williams*, J.

*E. M. Sullivan*, (*S. H. Lewis* with him,) for the petitioner.

*A. J. Gorey*, for the respondent.

WILKINS, J.   This is a petition for a writ of certiorari to quash the action of the respondent in revoking certain hackney carriage licenses issued to the petitioner.   The judge ruled that no error of law appeared in the record. From a judgment dismissing the petition the petitioner appealed.

The respondent's return shows the following: On August 9, 1945, the petitioner, who was the licensee named in

thirty-one hackney carriage licenses issued by the respondent under date of February 5, 1945, received by order of the respondent a written communication informing him that the licenses were "revoked, for the reason [that] it is reported to the police commissioner that you are not a suitable person to be so licensed." The revocation was without prior notice or hearing to the petitioner following a report by the inspector of carriages of the Boston police department. The report was entitled "Action on decision of United States District Court in case of Safety Cab [Co.] Inc. and Louis Hersch," and stated that "the decision . . . on August 1, 1945, . . . confirmed the action of Office of Price Administration which in effect ruled the Safety Cab out of the taxicab business for the duration of the war because of violations of the regulations promulgated by the OPA with respect to the use of gasoline in taxicabs. Louis Hersch signed a statement admitting the purchase of one hundred gallon inventory coupons having a gallonage value of between fifty thousand and sixty thousand. In fact he had no right to possess any of this type of coupon. In view of the above decision I am of the opinion that this man is not a suitable person to hold the hackney carriage licenses numbered . . . and I respectfully recommend they be revoked." Annexed to the report were copies of the decision of the United States District Court, and of the opinion and suspension order of the Office of Price Administration, which were substantially as described in the report.

The petitioner contends that the order of revocation was without authority of law. This question is properly raised by a petition for a writ of certiorari. *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269, 279, and cases cited.

It cannot be doubted that under the statutes as they stood prior to 1930 the police commissioner could take the action he did. By St. 1906, c. 291, § 10, as amended by St. 1909, c. 221, it was provided, "He shall have all the powers of the board of police in regard to revoking licenses issued by him, and in addition may, in his discretion, for any cause deemed satisfactory to him and without a hearing,

suspend and make inoperative for such period as he may deem proper any license issued by him." In *Rafferty* v. *Police Commissioner of Boston,* 259 Mass. 145, this court upheld the action of the police commissioner by whom certain hackney carriage licenses were suspended and made inoperative for an indefinite period because the holder of the licenses refused to obey lawful orders of a police officer and because it had been reported that the holder of the licenses had been "skinning" contrary to warnings by officers. It was said at page 146, "The stated grounds for revocation of the licenses appear reasonable. . . . The petitioner is wholly dependent for his rights and privileges upon the terms of the statute under which his licenses were issued." In *Morley* v. *Police Commissioner of Boston,* 261 Mass. 269, it was held that the police commissioner had the right to require taxicab operators who were holders of hackney carriage licenses to occupy designated stands, and that it was within his power to suspend or revoke licenses of those who refused to comply with that requirement. At pages 276–277, it was said, "The holder of a license cannot complain of limitations attaching to the privilege which, with full knowledge, he sought and accepted. . . . The holder takes it subject to the right of suspension and revocation authorized by statute . . . and subject to the rules and regulations and to the express conditions made a part of the license."

The contention of the petitioner, however, is that the foregoing has ceased to be the law as a result of later enactments. By Res. 1929, c. 53, there was created a special unpaid commission to investigate the subject matter of pending legislation "relative to the regulation of hackney carriages and taxicabs in the city of Boston, including all rules and regulations relating to hackney carriages and taxicabs promulgated by the police commissioner" and others, and also to "investigate the conduct of the police commissioner in granting licenses, parking or stand privileges to taxicab companies or taxicab owners, and the compensation paid, if any, for the use of any part of a public street." This was followed by the passage of St. 1930, c. 392, entitled,

"An Act providing for the regulation and limitation of hackney stands and hackney carriages in the city of Boston." Subject to certain powers of the traffic commission the police commissioner was given exclusive authority to make "rules and orders" for the regulation of hackney carriages and hackney stands, with penalties for violation not exceeding $20 for each offence (§ 1). All hackney carriages were to be licensed by the commissioner (§ 3). "Licenses granted under this section" were to be annual and subject to such terms, conditions, regulations, and fees as he should prescribe (§ 4). Special hackney stands abutting a hotel, station, pier, or building were authorized to be given to named licensees upon request of the owner or lessee of such property (§ 5). There were provisions for public hackney stands (§ 8). "All acts and parts of acts inconsistent with sections two to eight, inclusive, of this act, are hereby repealed, and all rules and regulations of the police commissioner of Boston inconsistent with said sections are hereby made null and void" (§ 9). "Notwithstanding the provisions of this act, all licenses otherwise affected thereby which are in effect on its effective date shall continue in force until the expiration date of such licenses, unless sooner revoked in accordance with law" (§ 10).

Section 4 was amended by St. 1933, c. 306. As so amended, it was repealed and a new § 4 enacted by St. 1934, c. 280. In its present form § 4 provides for the annual granting of hackney licenses "provided, that, at any time within one year after the expiration of a license under this section, the holder thereof shall be entitled as of right, upon payment of the proper fee, to a renewal of such license, unless after a hearing before said commissioner it appears that he has good cause to refuse to issue the same." It also is provided that licenses shall be assignable subject to the approval of the commissioner, and shall be subject to such other terms, conditions, and limitations, and to the payment of such fees as he may prescribe; and that he may fix the number of licenses within certain limits subject to the right of an applicant who is refused a license by reason of the fact that the maximum number of licenses has been

issued, to petition the department of public utilities to increase the maximum number.

The petitioner contends that St. 1930, c. 392, as amended by St. 1934, c. 280, is the "sole law" governing taxicab licenses in the city of Boston, "together with" the "rules and orders" made under § 1 of St. 1930, c. 392, and the "terms, conditions and limitations" made under the new § 4. He, therefore, urges that his licenses have been revoked for reasons of which he had no knowledge, and which are not to be found in the statutes, or in the "rules and orders," or in the "terms, conditions and regulations." It is not argued by anyone that the revocations in the case at bar were for a cause specified in any rules, orders, terms, conditions or limitations.

The main question presented is whether St. 1930, c. 392, as amended by St. 1934, c. 280, repealed by implication St. 1906, c. 291, § 10, as amended by St. 1909, c. 221. "A statute is not to be deemed to supersede a prior statute in whole or in part in the absence of express words or clear implication." *Inspector of Buildings of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85, 89. "Repeals by implication are not favored, and both statutes must stand unless it plainly appears that the later was intended to be a complete substitute for the earlier one." *Commonwealth* v. *Huntley*, 156 Mass. 236, 238. *Snell* v. *Bridgewater Cotton Gin Manuf. Co.* 24 Pick. 296, 297–298. *Commonwealth* v. *Bloomberg*, 302 Mass. 349, 352. *Dexter* v. *Commissioner of Corporations & Taxation*, 316 Mass. 31, 51. The general repeal of inconsistent acts in St. 1930, c. 392, § 9, adds nothing. See Sutherland on Statutory Construction (3d ed.) § 2013, where many cases are cited. As was said in *Commonwealth* v. *Kimball*, 21 Pick. 373, 377, "every statute is a repeal of all former ones by implication, so far as it is contrary and repugnant thereto, without a repealing clause." But St. 1930, c. 392, § 10, calls for the continuation in effect of existing licenses "unless sooner revoked in accordance with law." In that act there is no other reference to revocation of licenses. Obviously the phrase, "revoked in accordance with law," could not refer

to anything on that subject which might later be covered in the "terms, conditions and limitations" which the commissioner was authorized to prescribe under the new § 4; for the new § 4 is limited to "Licenses granted under this section," and does not affect licenses already in effect. Nor do we think that the phrase, "revoked in accordance with law," is confined to any action which might be taken under the "rules and orders" to be made by the commissioner under § 1. For many years there had existed the power to make such rules and orders, and that power was vested in the city officers from time to time charged with the regulation of hackney carriages. St. 1847, c. 224, § 1. *Commonwealth* v. *Stodder*, 2 Cush. 562. St. 1854, c. 448, § 33. Gen. Sts. c. 19, § 14. St. 1878, c. 244. St. 1885, c. 323.

We think, therefore, that St. 1930, c. 392, § 10, indicates a legislative intent to preserve the existing power of revocation contained in St. 1906, c. 291, § 10, as amended by St. 1909, c. 221. It follows that this is not a case for the application of the principle that where "a statute has been enacted, apparently intended to cover the entire subject to which it relates, including a remedy for its infraction, other provisions of law are superseded," as in *Bellevue Hotel Co.* v. *Building Commissioner of Boston*, 299 Mass. 73, 75, and similar cases. Nor do we need to consider the scope and effect of the rules and regulations prescribed by the commissioner.

We are of opinion that the provisions relative to renewal of licenses as of right, to be found in St. 1934, c. 280, have no bearing on the present situation. There is likewise no advantage to the petitioner in his suggestion, made without citation of authority, that he had been found to be a suitable person, because the licenses in question were issued February 5, 1945, whereas the petitioner's written acknowledgment of violation of the Federal rationing regulation was made August 7, 1944. Compare *Attorney General* v. *Tufts*, 239 Mass. 458, 481–482.

This is the opinion of a majority of the court.

*Judgment affirmed.*