## Town of Tupelo *v.* Beard & Holditch.

1. Retail License. *Municipal charter. School-fund.*
   Where a municipal charter, approved subsequently to the Constitution of 1869, empowers the town to tax retail liquor-dealers $100 for municipal purposes, but subject to such general school-law as the State may adopt, after the passage of sect. 2455, Code 1871, which provides that no town shall have power to levy an additional tax on the license therein provided, for municipal purposes, the town could not tax the retailer or collect any thing for the license on its own account.

2. Same. *Illegal tax. Voluntary payment.*
   Where one, presenting a petition to town authorities for license to retail liquors, satisfies them that he has paid the sheriff the amount due on account of the

State, and asks a reduction in the amount which he is to pay the town, which is accordingly made, and the sum then fixed paid the town treasurer before the license is granted, the payment is voluntary, and, although the petitioner and the corporate authorities erroneously construed the charter powers of the town, the money cannot be recovered back.

ERROR to the Circuit Court of Lee County.

Hon. J. A. GREEN, Judge.

The case is stated in the opinion of the court.

*M. H. Mabry*, for the plaintiff in error.

1. The payment was voluntary, and the money cannot be recovered back.   2 Dill. on Mun. Corp. 857, sect. 751; 34 Ala. 400; *Leonard* v. *Canton*, 35 Miss. 189 ; *Tuttle* v. *Everett*, 51 Miss. 27 ; 9 Allen, 393.

2. By the charter, the town had the power to levy the tax, which was not repealed by the Code of 1871.   Acts 1870, p. 395 ; Code 1871, sects. 2457, 2458.

*J. D. Williams*, on the same side.

1. The payment was not under compulsion.   2 Dill. on Mun. Corp. 751; *Cook* v. *Boston*, 9 Allen, 393 ; *Town Council* v. *Bennett*, 34 Ala. 400 ; 11 Ala. 997 ; 21 Ala. 756 ; 29 Ala. 233 ; *Leonard* v. *Canton*, 35 Miss. 189.

2. The charter gave the power to collect the license-fee. *Perdue* v. *Ellis*, 19 Ga. 586.   The power has not been repealed.   Dill. on Mun. Corp., sect. 54.

*J. A. Brown*, on the same side.

After having the $200 for the State school-fund paid, the town could collect a fee for licenses.   This power is granted by the charter.   Acts 1870, pp. 397, 399 ; *Alexander* v. *Town Council*, 54 Miss. 659.   The charter is not a *general law*, but a *special* act of incorporation.   The Constitution, art. 8, sect. 6, applies, by its terms, only to " moneys received for licenses granted under the general laws of the State."   The charter and general laws should be so construed that both shall stand (*Smith* v. *Vicksburg*, 54 Miss. 615 ; *Arthur* v. *Homer*, 96 U. S. 137), which is done by securing the $200 to the school-fund and giving the remainder to the town, as decided in *Holly Springs* v. *State Board* (MS.).

*Blair & Clifton*, for the defendants in error.

1. The Constitution of 1869, art. 8, sect. 6, devotes all license-tax money to the school-fund. The charter does not give to the town power to tax licenses (Acts 1870, pp. 397, 399 ; *Leonard* v. *Canton*, 35 Miss. 190 ; and if it did, the power would be revoked by the Code of 1871, sects. 2457, 2458. *Leake's Case*, 42 Miss. 316.

2. The payment was not voluntary, but the money paid can be recovered back. *Leonard* v. *Canton*, 35 Miss. 190 ; *Shewalter* v. *Brown*, 35 Miss. 423 ; *Coulson* v. *Harris*, 43 Miss. 751 ; *Tuttle* v. *Everett*, 51 Miss. 77 ; *Morgan* v. *Palmer*, 2 Barn. & Cress. 733 ; 17 Mass. 461. The counsel, on this point, also reviewed the authorities cited by opposing counsel, contending that they were not in point.

Simrall, C. J., delivered the opinion of the court.

This suit was brought by Beard & Holditch, partners, to recover from the town of Tupelo $290, compulsorily exacted and paid to the corporate authorities, in 1876, for a license to retail vinous and spirituous liquors for one year. The question raised by the demurrer to the declaration, and on the trial by the jury, was whether the plaintiffs ought to recover.

Considering that as the substantial question in controversy, we shall dispose of it without reference particularly to the pleadings and the instructions.

The town rested its defence on two grounds, namely, that it had a right to receive and retain the money, under its charter ; and, secondly, that the payment was voluntarily made, and therefore the money cannot be reclaimed.

First, as to the right. The seventh section of the charter (Acts 1870, p. 397) gave to the mayor and councilmen power to control and regulate all drinking-saloons, eating-houses, restaurants, and places of amusement or refreshment of any kind, and *the same to license*, or refuse to license, as they may deem expedient ; to fix the rate (tax) on merchants, * * * occupations, and callings ; but the parties so licensed shall be iable to all *State, and to county licenses and taxes*.

The eighth section allowed a tax of $100 to be imposed on every retail liquor-dealer. The eleventh section appropriated " all sums of money arising from licenses and tax, except State licenses and tax, , *   *   * derived from drinking-saloons, to be used for the public school of the town." " Provided this section shall be subject to the general school-law of the State, when the Legislature   *   *   * shall deem it necessary to so provide." The act of incorporation was approved the 20th of July, 1870.

We see in the charter a power to license, subject, however, to the State and county tax ; also a power to tax the business or occupation of the retailer to the extent of $100, for the use of the public school of the town, but subject to such general school-law as the State may see proper to adopt. The corporate authorities would have exhausted the authority to tax when they had collected $100 from the dealer, if the charter were unaffected by any subsequent legislation.

But the final clause of sect. 2458 of the Code declares " that no city, town, or county shall have power to levy an additional tax, or percentage, on the license herein provided for, for city, county, or town purposes." It is plain that this provision of the general law repeals the franchise conferred by the charter to tax the license or the retailer. Nor is this case open to the contention made in *Board of Education* v. *Aberdeen* (*ante*, p. 518), that the charter donated the money to the corporation.; for this act of incorporation studiously refrains from interfering with the State tax for license, and submits the privilege to collect $100 from the retailer to such regulation as the State might choose to make.,

The conclusion is that the town, under its charter, could legally collect nothing for the license on its own account ; nor could it tax the privilege or the retailer.

Secondly, was the $290 voluntarily paid? and if so, does that preclude a reclamation of the money?

The proof is clear that Beard & Holditch presented a petition for license, made the requisite bond, and satisfied the

corporate authorities that they had paid to the sheriff the $200 on account of the State, and asked that the amount which had theretofore been paid to the town should be reduced; that a reduction, at their instance, was made; that the amount fixed, to wit, $290, was paid to the town treasurer before the license was granted.

There is no doubt that the mayor and council and Beard & Holditch placed a wrong construction on the powers and franchises of the town.

The petitioners, Beard & Holditch, acted on the assumption that the town had a legal right to collect the money for corporate purposes, and the authorities labored under the same error as to its franchises.

The plaintiffs were the actors throughout, not at all doubting the authority and right of the town to the money. They seemed only concerned to reduce the amount. The next day after the mayor and council had acted on the application, Beard went to the place of business of the town treasurer, and handed him the money. He did not wait for a call on himself or partner.

The payment, then, was with full knowledge of the facts, but in mistake or ignorance of the law.

A voluntary payment of money, made under a mistake, or in ignorance of the law, if no fraud or imposition has been used to procure it, but the facts are known, cannot be reclaimed.

*The Town Council of Cahaba* v. *Burnett*, 34 Ala. 400, is, in its facts, strikingly like this case. Burnett sought to recover back $1,000 which he paid the town to retail liquor. The ordinance under which the application was made was void, and so declared afterwards. There was also an ordinance imposing fines for retailing without license. The court states the circumstances of the payment: "Without being thereto directly called or requested, the plaintiff went to the proper officer, paid him the sum required  *  *  *  to procure the license;" and adds, " that the payment was purely voluntary," unless the prospect of proceedings to punish for selling without

license would make the payment involuntary. If the party was influenced by such apprehension, it would not be such compulsion as comes within the rule on that subject. *Knibbs* v. *Hall*, 1 Esp. 279.

Payment of a demand unjustly made, and attempted to be coerced by suit, is not a compulsory payment which may be recalled, if the party was cognizant of the facts, and if there is no fraud. *Benson* v. *Monroe*, 7 Cush. 125.

An unsuccessful effort was made in *Mays* v. *Cincinnati*, 1 Ohio St. 268, to recover back money in circumstances much like those in this case. The principle is supported in the cases of *Clark* v. *Dutcher*, 9 Conn. 674, and *Robinson* v. *Charleston*, 2 Rich. 317.

Our conclusion on the second proposition is, that both parties — the city authorities and the plaintiff — acted under a misconception of the legal rights of the corporation, but both were equally aware of the facts, and that no fraud or imposition was practised on the plaintiffs. The payment by them was not constrained or compulsory. It would follow, then, that on the facts of the case, about which there is no conflict or uncertainty, the plaintiffs ought not to maintain this action.

The judgment is reversed, and a *venire facias de novo* awarded.