WILLIAM H. EMERY & another *vs.* CITY OF LOWELL.

Middlesex.    Jan. 9. — June 23, 1879.    COLT & ENDICOTT, JJ., absent.

The mayor and aldermen of a city, under the St. of 1875, *c.* 99, established fees for licenses to sell intoxicating liquors, and subsequently voted to grant a license to A., who the next day tendered the fee and demanded the license, but was told it would not be ready until the next day. On the same day, but after the tender was made, the mayor and aldermen voted to increase the fee for licenses. A., with full knowledge of the facts, paid the increased fee, under protest, and received his license. *Held,* that he could not recover back the money so paid.

CONTRACT for money had and received. Answer, a general denial. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on an agreed statement of facts in substance as follows :

On March 28, 1876, the mayor and aldermen of the defendant city, at a regular meeting, under the power conferred by the St. of 1875, *c.* 99, passed a resolution to establish the fees for licenses under that statute, the fee for a license of the first class (to sell liquors of any kind to be drunk on the premises) for innholders

being placed at $200. On May 2, 1876, at a special meeting, the mayor and aldermen of said city passed a resolution in regard to fees for licenses, making some changes in the fees for licenses of other classes, but leaving that of the first class for innholders at $200. On May 9, 1876, the mayor and aldermen voted to grant to the plaintiffs a license of the first class. On May 10, 1876, the plaintiffs tendered to the city treasurer the sum of $200, and demanded a license; they did not offer any bond to the treasurer, such as is required by § 9 of the statute, and nothing was said about it, but they were ready to give a bond if the license had been ready. The treasurer informed them that the license would not be ready until the next day. On May 11, 1876, the plaintiffs again called upon the treasurer, when they were informed that the mayor and aldermen, the day previous, but after the above tender was made, had voted to change the fee for licenses of the first class from $200 to $1000. Thereupon the plaintiffs paid to the treasurer the sum of $1000, under a written protest, and gave the bond required by law, and the treasurer then delivered to them the license, dated May 9.

The sum so paid was not then placed by the treasurer in the city treasury, but the same, together with all sums received for liquor licenses, was kept separate from the other funds of the city, and deposited in the Appleton National Bank of Lowell, to his credit as " Treasurer on account of liquor licenses," the other funds of the city being deposited in said bank " To the credit of the city of Lowell." On June 1, 1876, the treasurer paid to the treasurer of the Commonwealth, as required by said act, one fourth of the sum so received, viz. two hundred and fifty dollars, and the balance of said sum of one thousand dollars he then put into the city treasury, and the same was subsequently used by the city of Lowell, and before the institution of this suit.

If, upon these facts, the plaintiffs could recover, judgment was to be entered for them for such sum as the court might determine; otherwise, judgment was to be entered for the defendant.

*T. H. Sweetser & G. A. A. Pevey*, for the plaintiffs.

*G. F. Richardson*, for the defendant.

SOULE, J. The plaintiffs paid the money which they sue for with a full knowledge of all the facts in the case. They recognize the well-established principle that money voluntarily paid

with such knowledge cannot be recovered. They contend that the payment was not voluntary. Their argument is, that by the vote fixing the license fee at two hundred dollars, the vote to grant them a license, and their tender of the fee and demand for a license, a contract was made between them and the city which entitled them to a license at once; that there was a duty on the part of the city to license them; that the license certificate dated May 9 became their property ; and that the refusal of the city to deliver the license certificate except on payment of one thousand dollars made the payment of that sum for the license a payment on compulsion.

We are of opinion, however, that the action cannot be maintained. The statute authorizing the licensing of the sale of intoxicating liquors is a police regulation intended to regulate trade, prevent injurious practices, and promote the good order of the community. The license when granted is not a contract between the licensee and the city or town by the officers of which it is granted. Municipal officers in acting under the statute are merely exercising the police authority which the statute gives, as public officers. *Calder* v. *Kurby*, 5 Gray, 597. The statute expressly says that nothing in it shall be construed to compel city or town officers to grant licenses. St. 1875, *c.* 99, § 5. The whole subject of the granting of licenses, of determining whether a particular individual should or should not be licensed, and of fixing the fees for the several classes, is within the control of the municipal officers, until a license has been issued. Undoubtedly all licenses of a particular class for any year must be issued at one rate of license fee, but that fee may be fixed at any time before licenses are issued. The plaintiffs, therefore, had not acquired a right, as against the defendant, to a license for the fee of two hundred dollars, before the vote was passed fixing the fee at one thousand dollars.

Even if this were not so, the payment was a voluntary one. We do not regard it as changing the character of a payment from voluntary to involuntary or compulsory, that it is important to the party paying to get what he gets by the payment, in other words, that there should be an urgent need on his part. It is ordinarily and almost necessarily true that one pays what he regards as extravagant, only for what seems to him an important

result, and submits to the demand for what he regards as an exorbitant or illegal fee, only because there is an urgent need for what the payment will produce. It would be unsafe to leave the question of recovering money paid to depend on the urgency of the need of the party when paying it. The plaintiffs wished a license. They were at liberty to take it or not, as they saw fit. They paid the fee demanded, knowing all the facts in the case. A refusal to pay would have resulted merely in their not being licensed. They must be held to have paid voluntarily, and not under coercion. The case is not analogous to an action to recover the amount of an illegal tax paid to a collector armed with authority to collect it by a distress. It is not stronger for the plaintiffs than the case of an action to recover the amount of an illegal tax, paid under protest, within the time prescribed by the town, so that the payer obtained a discount for early payment; and such action cannot be maintained. *Lee* v. *Templeton*, 13 Gray, 476. The case at bar seems to be covered by the decision in *Cook* v. *Boston*, 9 Allen, 393, where it was held that money paid under protest for a wagoner's license, with a full knowledge of all the facts, must be deemed to have been paid voluntarily, and could not be recovered back.

*Judgment affirmed.*