JOHN G. TABER *vs.* CITY OF NEW BEDFORD.

Bristol.. October 22, 1900. — November 28, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Removal of Board of License Commissioners — Application for License — Voluntary Payment free of Contract or Condition — Mistake of Fact — Validity of License.*

An old board of license commissioners was removed by the mayor of a city on April 12, and a new one appointed. On April 15, the old board petitioned a justice of the Superior Court for a review of the charges against them. While this petition was pending, the new board sent the plaintiff notice that an application for a license, filed by him on April 1, was granted. The plaintiff was told by the mayor that he had had some protests struck off, and to go in and pay for his license, and if the decision of the court went against him he should have his money back. The plaintiff paid his money to the city treasurer, handing him at the same time a signed paper, called a protest, to the effect that he tendered the license fee "with the request that it be returned if the board as above constituted should not be declared legal." The treasurer gave the plaintiff a receipt, which he took to the license commissioners, and they gave him a license on his giving bond to the treasurer as required by Pub. Sts. c. 100, § 13. On May 7, the mayor's order removing the old board was revoked. *Held,* in an action for money had and received, that the plaintiff made a voluntary payment free of any binding contract or condition; that there was no mistake of fact; and that the license was valid, at least while the board granting it remained in office.

CONTRACT, for money had and received. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, the nature of which appears in the opinion. If the ruling was wrong, judgment was to be entered for the plaintiff in the sum of $1,000 with interest from the date of the writ; otherwise, judgment was to be entered on the verdict.

*L. T. Willcox & W. C. Parker,* for the plaintiff.

*L. LeB. Holmes,* for the defendant.

HOLMES, C. J. This is an action to recover $1,000 paid by the plaintiff for a license to sell intoxicating liquors. The plaintiff got the instrument which he expected to get, but contends that he paid his money under such a contract or upon such a condition that he is entitled to have it back. The facts were these. An old board of license commissioners had been removed

by the mayor on April 12, 1897, and a new board appointed. On April 15, the old board had petitioned a justice of the Superior Court for a review of the charges against them. While this petition was pending, the new board sent the plaintiff notice that an application for a license, which he had filed on April 1, was granted. Thereupon the plaintiff, having doubts as to what the effect of the decision of the judge of the Superior Court might be, had some talk with the mayor, the end of which was that the mayor said that he had had some protests struck off, and told the plaintiff to go in and pay for his license, and that if the decision of the court went against him he should have his money back. The plaintiff went into the city treasurer's office and paid his money, handing the treasurer at the same time a signed paper to the effect that he tendered the license fee with the request that it be returned if the board as above constituted should not be declared legal. This was the document called by the mayor a protest. The treasurer gave the plaintiff a receipt, presumably in the ordinary form, which he took to the license commissioners, and they gave him a license on his giving bond to the treasurer as required by Pub. Sts. c. 100, § 13. On May 7, the mayor's order removing the old board was revoked. The plaintiff tried to get his money back, and brought this action.

It is too plain for extended argument that the plaintiff cannot recover. Looking at the form which the final transaction took, the plaintiff made an unconditional payment with a simple request for repayment in a certain event, and gave a bond unconditionally recognizing that he had received a license. His request, construed in the light of the law, neither expressed nor implied a condition, but left him at the mercy of the proper authorities. His previous talk with another officer who had no control over the issuing of licenses could not qualify the later transaction with the treasurer and the licensing board. Moreover, he was bound to know that the law required an absolute payment as the condition of a license, Pub. Sts. c. 100, § 13; that the mayor had no right to intermeddle in the matter, or authority to bind the city by the supposed promise; that his payment did not purport to be made in pursuance of such a promise, and that if he took a license any condition subsequent which he might attempt to annex to his payment was simply void. He got the instru-

ment for which he paid his money from the officers from whom he expected it, and whose tenure of office he understood. There was no mistake of fact. If under a mistake of law he supposed that there was a condition attached to his payment or a further consideration in the form of a promise, it was his misfortune. So if he was disappointed as to the board's remaining in power. We need not consider what would have been his position if the license had been wholly void (although even then the mistake would have been one of law alone), because it was not wholly void.

At least until the order removing the old board was revoked, it was effectual. After the removal of the old board, the mayor had the right to appoint a new board at once. The new board when appointed was a licensing board, not only *de facto*, (*Coolidge* v. *Brigham*, 1 Allen, 333 ; *Martel* v. *East St. Louis*, 94 Ill. 67,) but *de jure*. When the order of removal was " revoked," to use the significant word of the statute, it was not rescinded from the beginning and made as if it never had been. That is not the meaning of " revoked," which imports that the order is in force until it is recalled. Further evidence that this is the intent of the statute is to be found in the fact that the procedure is not an appeal but a petition for a review, which in other cases is understood to leave the thing to be reviewed standing up to the moment of a contrary judgment. It follows that the license granted to the plaintiff was good, at least so long as the new board was in office. If it was revoked when the new board went out, he could not recover any part of what he paid for it. *McGinnis* v. *Medway*, 176 Mass. 67.

There is no ground for saying that the plaintiff's payment was less voluntary in this case than in *Emery* v. *Lowell*, 127 Mass. 138, 140. It does not seem necessary to give further reasons for our decision.

*Judgment on the verdict.*