SYLVESTER BROWN *vs.* INHABITANTS OF NAHANT.

Essex.    November 6, 1912. — January 27, 1913.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*License. Intoxicating Liquor. Municipal Corporations. Contract,* Implied in law.

In assuming for the purposes of decision, that money paid for a license to sell intoxicating liquors can be recovered in an action of contract upon proof that the license for which the money was paid was void *ab initio*, it was said by the court that this point never has been decided in this Commonwealth.

Under R. L. c. 100 and amendments thereof, licenses to sell intoxicating liquors in a town cannot be granted by the town itself but can be granted only by the selectmen of the town acting as public officers under authority of the Commonwealth, and the fees paid for such licenses are not paid to the town but to the treasurer of the town likewise acting as a public officer and not as an agent of the town.

Where the treasurer of a town under the provision of R. L. c. 100, § 45, pays to the treasurer of the Commonwealth one fourth of the amount received for licenses for the sale of intoxicating liquors granted by the selectmen of the town, the remaining three fourths of such license fees, when turned into the treasury of the town, are received as a part of the distribution made by the town treasurer as a public officer and not as payments made to the town by the persons to whom the licenses were granted; so that such a licensee cannot recover from the town the amount of a license fee on the ground that he paid it under a mistake of fact, because there was no transaction between the town and the licensee, and because a town cannot be held liable for the act of a public officer, although enjoying the advantage of it, unless a remedy is given by statute.

If a tenant of the United States occupying a building on land of the United States, which has been acquired by purchase and by condemnation proceedings for the purposes of national defense but has not yet been used for such purposes, chooses to apply to the selectmen of the town in which the property is situated for a

license to sell intoxicating liquors and is granted such a license, he cannot afterwards recover the money that he voluntarily paid for such license, whether or not he lawfully could have carried on his business without the license.

CONTRACT to recover from the town of Nahant money paid in the years 1904, 1905 and 1906 for licenses to sell intoxicating liquors at the Tri-Mountain House, alleged to have been in a United States reservation and not in the town of Nahant during those years. Writ dated November 19, 1908.

In the Superior Court the case was submitted to *Bell*, J., upon an agreed statement of facts, which included the following:

By St. 1902, c. 373, the consent of the Commonwealth was granted to the United States to acquire by purchase or condemnation a tract of land in the town of Nahant containing about forty-five acres, to be described in the plans provided for in § 4 of the act, to be used for the purposes of national defense. By § 4 it was provided that the act should be void unless a suitable plan or plans of the premises acquired by the United States under the act should be deposited in the office of the secretary of the Commonwealth within six months after the acquisition thereof.

On February 5, 1904, by a decree of the District Court of the United States, the tract including the land on which the Tri-Mountain House was situated was condemned to public uses of the United States. On June 8, 1904, the United States filed a plan of this reservation in the office of the Secretary of State of the Commonwealth.

U. S. St. February 2, 1901, c. 192, § 38, 31 U. S. Sts. at Large, 758, is as follows: "The sale of or dealing in, beer, wine or any intoxicating liquors by any person in any post exchange or canteen or army transport or upon any premises used for military purposes by the United States, is hereby prohibited. The Secretary of War is hereby directed to carry the provisions of this section into full force and effect."

For many years up to and including 1906, the plaintiff applied for and was granted a license of the first class to sell intoxicating liquors to be drunk upon the premises at the Tri-Mountain House during the summer season, in accordance with the provisions of Chapter 100 of the Revised Laws and of the corresponding provisions of earlier laws, and he continued to sell liquor and to conduct the business of a summer hotel there until November, 1906.

The plaintiff paid a license fee of $1,000 in each of the years 1904, 1905 and 1906.

On April 1, 1900, the United States had acquired by purchase and deed the tract of land including the site of the Tri-Mountain House. At that time the plaintiff had a lease of the Tri-Mountain House which did not expire until April 1, 1903. On July 30, 1903, the plaintiff received from the Secretary of War, a new lease of the premises for five years, dating from April 1, 1903. This lease was revoked on April 1, 1907, and a new lease was given to the plaintiff in place of it. The deed to the United States was recorded on January 4, 1901. On and after April 1, 1900, the plaintiff was a tenant of the United States and paid rent to the United States. The plaintiff continued to be a tenant of the United States and to pay rent for the premises up to and including November 15, 1907. In each of the years 1904, 1905 and 1906 the plaintiff paid to the United States an internal revenue tax of $25 a year on the business of a retail liquor dealer at the Tri-Mountain House. On November 7, 1906, authorized representatives of the United States forbade the plaintiff to deal in or sell beer, wine or any intoxicating liquors upon the premises of the Tri-Mountain House. No use of the reservation including the Tri-Mountain House was made by the United States for purposes of national defense before November 7, 1906.

"The sum of $3,000 paid by the plaintiff for the said licenses went into the treasury of the town of Nahant, and three fourths of said amount, namely, $2,250 was retained by the town of Nahant and expended by it for municipal purposes. The balance was paid to the Commonwealth in good faith as required by law. A demand was made upon the town of Nahant for the return of the money paid for the licenses on September 12, 1908."

It was agreed that no question of pleading should be raised. It also was agreed that the court might draw all proper inferences from the facts agreed upon.

The judge ruled that the action could not be maintained and found for the defendant. By agreement of the parties he reported the case for determination by this court. If his ruling was correct, judgment was to be entered for the defendant; if upon the case stated the plaintiff was entitled to judgment, such judgment was to be ordered for $2,250 or for $3,000 as this court might deem

just, or such other order was to be entered as in the opinion of the court justice and equity required.

The case was submitted on briefs.

*S. Parsons & H. A. Bowen,* for the plaintiff.

*W. H. Niles & H. R. Mayo,* for the defendant.

SHELDON, J. The plaintiff seeks to recover from the defendant town certain sums of money which he avers he paid to the defendant, in three successive years, for licenses to sell intoxicating liquor granted by it to him. See R. L. c. 100, and the acts in amendment thereof. His claim is that he paid his money to the defendant and took the licenses from it under a mistake of fact, in that he supposed that the building specified in the licenses was a part of the defendant town and that the town had jurisdiction and authority to grant the licenses for sales to be made in that building, whereas in fact the building stood upon land which had become part of a United States reservation and subject to the control and jurisdiction of the United States, under St. 1902, c. 373; and he contends that for this reason the licenses which he says that the town granted to him were void, and that he is entitled to have his moneys returned to him. The case comes to us upon an agreed statement of facts, with power to draw inferences therefrom.

If we assume, what never has been decided in this Commonwealth, that the plaintiff, if otherwise entitled to do so, could maintain his action upon proof that these licenses were void *ab initio,* there are yet serious difficulties in his path.

The licenses were not granted to him by the town of Nahant or in any sense by its authority. They could have been granted only by the selectmen of the town. These selectmen, in passing upon his applications and granting him licenses, acted merely as public officers under the authority of the Commonwealth, and the moneys which he paid as license fees were not really paid to the town, but to the treasurer of the town, likewise acting as a public officer and not as an agent of the town. *McGinnis* v. *Medway,* 176 Mass. 67. *Taber* v. *New Bedford,* 177 Mass. 197. R. L. c. 100, § 42. It is because the treasurer receives such money as a public officer and not as an agent or servant of the town that the liability for interest, if he makes delay in paying the required part to the Commonwealth, is imposed upon him personally and

not upon the town. R. L. c. 100, § 45. If, as the parties have said, the plaintiff's payments were made to the town, this can mean only that they were paid in hand to the town to be by it at once turned over to its treasurer, the only officer who had authority to receive the payments. Certainly this necessarily appears from the facts agreed. And it is agreed that no question of pleading is raised.

Three fourths of the amount of these license fees did actually come into the town treasury; but that amount came mingled with the same proportional part of all the license fees that were received by the town treasurer, and not in any sense as the money of the plaintiff. There was absolutely no transaction between the plaintiff and the defendant town. But it is a general principle in this Commonwealth that no action will lie against any city or town for the act of a public officer, though inuring to its advantage, unless the right of action has been given by statute. Accordingly it was expressly declared in *McGinnis* v. *Medway,* 176 Mass. 67, that a city or town is not responsible for any acts of its licensing board, whether a special commission or the mayor and aldermen, or, as here, the selectmen of a town. We know of no statute which creates such responsibility in a case like this. See St. 1902, c. 171. There could have been here no mistake of fact common to the plaintiff and the defendant town.

Nor, under the circumstances here presented, has the plaintiff failed to enjoy the benefit of his licenses. The tract of land which includes his premises and over which jurisdiction was granted to the United States by St. 1902, c. 373, was to be used by the United States only for purposes of national defense. It did not begin to be so used until November, 1906. Until that time nothing in the Act of Congress of February 2, 1901, (U. S. St. c. 192, § 38,) made the plaintiff's business unlawful, and in the meantime he continued his business under the protection of the licenses which he had obtained from the selectmen. Under the strict terms of St. 1902, c. 373, § 2, there is room for doubt whether without his licenses he lawfully could have carried on his business during the time that they were in force. See *Palmer* v. *Barrett,* 162 U. S. 399. At any rate, when he applied to the selectmen for licenses, those officers had a right to believe that he chose to make himself safe from any danger of prosecution by taking licenses to sell

intoxicating liquors at his house. Altering somewhat the language of Mr. Justice Holmes in *Alton* v. *First National Bank of Webster,* 157 Mass. 341, 344, this was a matter equally open for the inquiry and the judgment of the plaintiff and the selectmen, and the latter had the right to assume that the plaintiff relied wholly on his own means of information. He chose to apply for licenses in the manner provided by law; the public officers whose duty it was to consider the question granted his applications; he voluntarily took the licenses which they consented to give him, and paid to the proper public officer (whether directly or indirectly is not material) the license fees. He cannot now exact from the town the return of that part of his money which finally went into its treasury any more than he can require the Commonwealth to repay to him the amount which came into its hands.

We see no ground upon which the action can be maintained. Though this exact point apparently has not been passed upon, somewhat similar questions have been decided in the same way. *Cook* v. *Boston,* 9 Allen, 393. *Emery* v. *Lowell,* 127 Mass. 138. *Kraft* v. *Keokuk,* 14 Iowa, 86. *Edinburg* v. *Hackney,* 54 Ind. 83. *Brazil* v. *Kress,* 55 Ind. 14. *Cahaba* v. *Burnett,* 34 Ala. 400. *Tupelo* v. *Beard,* 56 Miss. 532. *Custin* v. *Viroqua,* 67 Wis. 314. Judgment must be for the defendant.

*So ordered.*