DAVID C. BURGESS & others *vs.* MAYOR AND ALDERMEN OF BROCKTON & another.

SAME *vs.* SAME.

Suffolk. Plymouth. January 5, 1920. — February 26, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Motor Vehicle*, License to operate for hire. *Carrier*, Of passengers. *Constitutional Law*, Police power. *Municipal Corporations*, By-laws and ordinances, Power to license and to revoke license. *License. Street Railway. Monopoly.*

St. 1916, c. 293, § 1, empowering such cities and towns as should accept its provisions "to license and regulate the transportation of passengers for hire as a business between fixed and regular termini by means of any motor vehicle," with certain exceptions, was a valid exercise of the police power and was constitutional.

Where the rights given to one who has been granted a license to conduct a certain business are dependent wholly upon the terms of a statute or an ordinance, and such statute or ordinance contains a provision for revocation of the license but, neither expressly nor by fair implication, any requirement that, before such revocation, the licensee shall be entitled to a notice or to a hearing, the rights under the license may be cut off by a revocation without a notice or a hearing.

An ordinance, enacted, before the enactment of St. 1919, c. 371, by the city of Brockton, which had accepted the provisions of St. 1916, c. 293, provided that the licensing authorities might suspend or revoke any license granted for the use of a motor vehicle for hire "for violation of any law of the Commonwealth made in relation to the operation of motor vehicles, or violation of any traffic ordinance of said City . . . or violation of any of the rules, restrictions, requirements or regulations herein prescribed or for any other cause deemed by said licensing authorities in the exercise of reasonable discretion to be sufficient." Licenses were granted under the provisions of the ordinance and the licensees made investments for the conduct of their business in reliance upon a continuance of their licenses. Thereafter the public trustees operating the Eastern Massachusetts Street Railway Company notified the mayor and aldermen that they proposed to discontinue certain street car lines in the city because of insufficient returns due to unfair competition by licensees under the ordinance. After public meetings and careful consideration and acting in good faith and in the exercise of a reasonable discretion, the mayor and aldermen revoked the licenses for the general convenience of the public. *Held,* that

(1) A license granted under the provisions of the ordinance might be revoked without the licensee being given notice or a hearing;

(2) The provisions of the ordinance above quoted were within the scope of the authorization of the statute;

(3) While the power to revoke a license given by the ordinance was not a power to revoke arbitrarily or irrationally, revocation under the circumstances above described was reasonable and valid;

(4) The fact that the licensees had made investments for the conduct of their business in reliance upon a continuance of their business made their licenses no less revocable under the provisions of the ordinance.

The power, given by the provisions of St. 1916, c. 293, § 1, before the enactment of St. 1919, c. 371, to such cities and towns as should accept its provisions, "to license and regulate the transportation of passengers for hire as a business between fixed and regular termini by means of any motor vehicle, [with certain exceptions,]" imposes no obligation upon such municipalities to grant any licenses.

Neither the provisions of the ordinance above described nor the action of the licensing authorities in revoking the licenses granted thereunder in order that the service of the public by the trustees of the street railway company might not be discontinued contravened the principles of the common law or of the statute relating to monopolies.

PETITION, filed on December 3, 1919, for a writ of certiorari directed to the mayor and aldermen and city clerk of the city of Brockton, commanding that the proceedings and records relating to the granting and revoking of certain licenses to operate motor

vehicles for hire be certified to this court, and that such proceedings may be quashed and declared illegal; also a

BILL IN EQUITY, filed in the Supreme Judicial Court on December 3, 1919, and afterwards amended, seeking to enjoin the mayor, aldermen and city marshal of the city of Brockton from preventing the plaintiffs from operating motor vehicles for hire in accordance with a license which had been granted them under the ordinance described in the opinion.

The cases were heard together by *Carroll,* J., who reserved them for determination by the full court, the petition for a writ of certiorari upon the petition and the certificate of the respondents and the bill in equity upon the pleadings and certain findings of fact. The material facts are stated in the opinion.

St. 1916, c. 293,* read as follows:

"Section 1. Cities and towns shall have authority to license and regulate the transportation of passengers for hire as a business between fixed and regular termini by means of any motor vehicle, except the trackless trolley vehicle, so-called, not running on tracks or rails, and may impose reasonable license fees, make regulations for the operation of such vehicles within their own limits, and impose suitable penalties for the violation of such regulations: provided, however, that no such motor vehicle shall be operated as aforesaid until the licensee of the vehicle, in addition to complying with all regulations of the city or town in which the vehicle is to be operated, shall have deposited with the treasurer of any city or town in which a license has been taken out, security by bond or otherwise, approved by the city or town treasurer, in such sum as the city or town may reasonably require, conditioned to pay any final judgment obtained against the principal named in the bond for any injury to person or property, or damage for causing the death of any person, by reason of any negligent or unlawful act on the part of the principal named in said bond, his or its agents, employees or drivers, in the use or operation of any such vehicle. Any person so injured or damaged may sue on the bond in the name of the city or town treasurer, and damages so recovered shall go to the person injured or damaged.

"Section 2. Nothing in this act shall be construed as requiring

---

* See St. 1919, c. 371.

the licensee to file more than one bond, which shall be filed in any city or town in which a license has been taken out.

"Section 3. This act shall take full effect in cities upon its acceptance by the city council, and in towns upon its acceptance by the voters of the town at any duly called town meeting. For the purpose of submitting this act to cities and to towns, it shall take effect upon its passage."

The cases were submitted on briefs.

*O. V. Fortier, J. J. Geogan & S. Adams,* for the petitioners and plaintiffs.

*W. M. Wilbar,* for the respondents.

RUGG, C. J.   The validity of an ordinance of the city of Brockton and of action of the mayor and aldermen of that city under it are challenged in these proceedings. St. 1916, c. 293, has been accepted by the city council of the city of Brockton. Section 1 of that act authorizes cities and towns, which accept its provisions, "to license and regulate the transportation of passengers for hire as a business between fixed and regular termini by means of any motor vehicle," with exceptions not here material, and to "make regulations for the operation of such vehicles within their own limits." Pursuant to the authority conferred by that act, in August, 1919, a comprehensive ordinance concerning the licensing and operation of such motor vehicles was adopted by the appropriate municipal board of the city of Brockton. By § 16 thereof it is provided that "The licensing authorities may suspend or revoke any license granted for the operation of such motor vehicle . . . for violation of any law of the Commonwealth made in relation to the operation of motor vehicles, or violation of any traffic ordinances of said City of Brockton or violation of any of the rules, restrictions, requirements or regulations herein prescribed or for any other cause deemed by said licensing authorities in the exercise of reasonable discretion to be sufficient."

The petitioners all were duly licensed under the ordinance and began to exercise the privileges thereby granted. By the express terms of St. 1918, c. 226, § 2, each was declared to be a common carrier.

In November, 1919, the licenses granted to the petitioners and all others of like kind were revoked, not because of any violation of the licenses or of the law by the licensees, but under the final

clause of § 16 of the ordinance, for another "cause deemed by said licensing authorities in the exercise of reasonable discretion to be sufficient." The reason for that action arose from these circumstances: The public trustees of the Eastern Massachusetts Street Railway Company gave notice to the mayor and aldermen of Brockton of a proposed discontinuance of certain street railway lines in Brockton because of failure to earn proper return on account of unfair competition of licensees under the ordinance. See Spec. St. 1918, c. 188, § 11. Thereupon, after general announcement had been made through the press, largely attended public meetings were held in the various wards of the city, conducted by the aldermen, to ascertain the preferences of those citizens who chose to be present, touching means of public transportation. At these meetings the matter of revoking the licenses of the so called "jitneys" was discussed. The sentiment expressed at these meetings appeared to be in favor of the retention of the street railway service. The board of aldermen, in revoking the licenses, acted in good faith and in the exercise of a reasonable discretion in the interests of the public safety and convenience as they believed, to the end that the mode of transportation which they thought best calculated to serve the entire population of the city might be preserved and maintained. The general convenience of the public was the ground of revocation of the licenses. The "jitneys," (as the motor vehicles of the petitioners are termed), could not carry all the people. The aldermen, in revoking the licenses and thereby continuing the street railway to the exclusion of the "jitneys," honestly acted according to their judgment of the public welfare.

It has been settled that the statute, pursuant to the authority of which the ordinance was passed, is valid. Regulation of the operation of vehicles for the conveyance of passengers and the requirement of a license for the use is a lawful subject for regulation by statute or by municipal ordinance. All this was decided in *Commonwealth* v. *Slocum*, 230 Mass. 180, 190, and cases there collected. *Commonwealth* v. *Theberge*, 231 Mass. 386. It now is too well settled for discussion that such limitations of the use of the highways come within the valid exercise of the police power. *Commonwealth* v. *Worcester*, 3 Pick. 462. *Commonwealth* v. *Mulhall*, 162 Mass. 496. *Brodbine* v.

*Revere,* 182 Mass. 598. *Commonwealth* v. *Kingsbury,* 199 Mass. 542.

A license such as those here in question is a mere privilege or permission and in no sense a contract or property. *Young* v. *Blaisdell,* 138 Mass. 344. *Lowell* v. *Archambault,* 189 Mass. 70. *Calder* v. *Kurby,* 5 Gray, 597. *Union Institution for Savings* v. *Boston,* 224 Mass. 286.

The petitioners claim under the ordinance. Their licenses each was subject to its terms by implication if not expressly. The ordinance does not in words provide that there shall be a hearing before revocation of a license. It was held in *Commonwealth* v. *Kinsley,* 133 Mass. 578, that a statute providing for revocation of a license to keep a billiard table for hire without notice or hearing was valid, and that one took his license subject to the terms of such a statute. There are numerous instances where important personal rights may be affected or settled without notice or hearing. *Palmer* v. *Clark,* 106 Mass. 373, 384. *Holt* v. *City Council of Somerville,* 127 Mass. 408, 410. *Hanley* v. *Aetna Ins. Co.* 215 Mass. 425, 430. *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 9, 10. See *Richards* v. *Morison,* 229 Mass. 458, 466. A hearing is so important to the decision of a question of either fact or law that ordinarily one is not concluded in his rights touching such a matter unless he clearly has agreed to abide by a determination without a hearing. *Billings* v. *Billings,* 110 Mass. 225. Where the rights of a licensee are wholly dependent upon the terms of a statute or ordinance, and there is provision for revocation of the license but no requirement for notice or hearing either expressly or by fair implication, then his rights to the license may be cut off by revocation without notice or hearing. The rights of a licensee can rise no higher than the terms of the statute or ordinance by which he becomes holder of the license. *People* v. *Department of Health,* 189 N. Y. 187, 194. *Child* v. *Bemus,* 17 R. I. 230.

Some of the petitioners were present when the licenses were revoked. They all were members of a voluntary association known as the Brockton Autobus Union. The secretary and business agent of that organization was present at the meeting both as a citizen and in his official capacity, and was given an opportunity to be heard. These facts are imma-

terial. The revocations were valid without notice and without hearing.

The ordinance was within the scope of the authorization of the statute. The power to revoke is not to be exercised arbitrarily or irrationally. In its primary aim, public welfare rather than the use of private property exclusively is concerned. The case is distinguishable from *Commonwealth* v. *Maletsky*, 203 Mass. 241, and *Kilgour* v. *Gratto*, 224 Mass. 78, and the numerous decisions collected in each. The ordinance cannot be pronounced irrational or unreasonable.

The grounds upon which the aldermen acted afford illustration that the ordinance in its operation may be thought to be for the public interests. Private property invested in the street railway has been in a sense devoted to a public use. It cannot be withdrawn at the pleasure of the investors. *White Co.* v. *Commonwealth*, 218 Mass. 558, 580; *S. C.* 246 U. S. 147, 157. It cannot be converted to other uses without great waste. Its owners cannot be required in general to operate the road at a loss. *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 316, 317. The petitioners have been licensed to transport passengers for hire. Their investment is not by its nature so irrevocably devoted to that service as is that of the street railway. It is obvious that the situation presents a conflict of interests, where the preponderating convenience of the public to be determined by some impartial tribunal ought to govern. That is the design of the ordinance. The purpose of the aldermen in taking their action was in conformity to that design.

The petitioners have no absolute right to conduct the business of transporting passengers over the public ways. The circumstance that investments have been made in reliance upon the continuance of the licenses affords the petitioners no superior standing. They are no better off than those who have paid a heavy license fee in the hope of continuance of the privilege, and who are held to take their chances in that particular. *McGinnis* v. *Medway*, 176 Mass. 67. *Taber* v. *New Bedford*, 177 Mass. 197. *Brown* v. *Nahant*, 213 Mass. 271. Street railways in this Commonwealth hold their locations in public ways under a tenure no more secure than a privilege or permit subject to revocation. *Medford & Charlestown Railroad* v. *Somerville*, 111 Mass. 232. *Selectmen of Amesbury* v. *Citi-*

*zens Electric Street Railway,* 199 Mass. 394, 397. St. 1906, c. 463, Part III, § 66.

The power "to license and regulate the transportation of passengers for hire" conferred by § 1 of said c. 293, imposes no obligation to grant any licenses. It was said in *Attorney General* v. *Boston,* 142 Mass. 200, at page 203: "The power to regulate the use of the streets of a city implies the power to prohibit the use of them under certain circumstances. *Commonwealth* v. *Stodder,* 2 Cush. 562, 571. *Union Railway* v. *Mayor & Aldermen of Cambridge,* 11 Allen, 287, 294." The statute and ordinance here under review differ radically in their terms from the statute before the court in *Rea* v. *Aldermen of Everett,* 217 Mass. 427. The right to use public ways as a common carrier of passengers under a license is totally distinct in this respect from the exercise of a natural right or the pursuit of ordinary means of earning a living. *Gleason* v. *McKay,* 134 Mass. 419. *O'Keeffe* v. *Somerville,* 190 Mass. 110.

The street railway is of necessity to a limited extent a governmentally controlled monopoly. It is a *quasi* public corporation. It is subject to public regulation. *Attorney General* v. *Haverhill Gas Light Co.* 215 Mass. 394. Neither the terms of the ordinance nor the action of the respondents under it contravenes the principles of law or of the statute against monopolies.

*Petition for certiorari denied.*

*Decree to be entered dismissing bill in equity.*