Zottoli, J.
This is an action of contract wherein the plaintiffs, as assignees, seek to recover an installment due under a contract entered into by his assignor, one Casale and the defendant. The answer in substance sets up a general denial, payment and illegality. The parties apparently concede that the evidence established the following facts: that, “the plaintiff’s assignor, Casale, was the owner of a certain lunchroom and was duly licensed to sell malt beverages at said store during the year 1935”, and that, “on or about October 21,1935, he entered into the following contract with the defendant;” “Agreement made this 21st day of October 1935 by and between Joseph D. Casale, doing business as Cosy Lunch at 588 Hyde Park Avenue, Hyde Park, and William Burehill, both of said Boston. Whereas Casale is to sell and Burehill is to buy said business, including goodwill restaurant and malt beverage business for $1000. payable $100. forthwith, $200: as soon as and when all outstanding bills owed by the present owner are paid, and the balance payable $50. monthly commencing January 1, 1936. Casale hereby sells to Burehill all merchandise, stock and fixtures on the premises, delivery to be made at close of business to-day (except money in the cash register). Casale hereby warrants that he owns all property hereby sold, free and clear of all encumbrances. Rent is to be paid by the seller to close of business today. If the seller cannot give good title he is to refund the $100. at once. All licenses are included in the sale and to stand in the name *549 of Casale until January 1, 1936. Upon thirty days default in any payment, title to property sold is to revert to Casale.
(Signed) Joseph D. Casale
(Signed) William Burchill
Witness . . T. L. Thistle”;
that the sale of the license was part of the purchase price; that the defendant paid him $100.00 under the agreement and took possession of the store; that he (the defendant) procured a lease thereon in his own name. It further appeared in evidence that on October 23, 1935, the defendant, at the request of the plaintiff’s assignor, drew a series of four checks totaling One Hundred and Ninety Dollars ($190.00) to the order of the plaintiff’s assignor on the representation that these checks would pay up- all the outstanding bills that had been incurred by said plaintiff’s assignor. These checks were produced in evidence and three of them showed that they had been received by various brewing companies. The plaintiff’s assignor admitted that all the payments due under the agreement had been made except the $50. payments therein described. The report further shows that a few weeks after the defendant had been in possession, an Alcoholic Beverage Commission Inspector called at the defendant’s lunchroom and, in the course of a conversation, was shown the agreement. Within a few days, the defendant received notice from the Alcoholic Beverage Commission to close the business as the license issued to Casale had been suspended, whereupon, the defendant and the plaintiff’s assignor appeared at an informal hearing before the Licensing Board.
The defendant testified that the plaintiff’s assignor represented to the Licensing Board that the defendant had intended to buy the business, but that the agreement had been cancelled and that the defendant was managing the store *550 for bim, whereupon, the license was reinstated. The assignor Casale denied this and testified he told the Board that he had a deposit and an understanding that Burchill would take the place over the first of the year. There was further testimony that on January 1, 1936 the defendant procured a malt beverage license in his own name and continued to do business; that the plaintiff’s assignor had not paid all the outstanding bills that he had agreed to under the agreement. Casale testified that he had straightened out everything.
' At the close of the evidence, the defendant duly filed ten requests for rulings. The court denied seven of these requests and found for the plaintiff. As the defendant has argued and briefed only two contentions; (1) illegality, (2) failure of consideration; we need consider only such requests as bear on these contentions: Guinan v. Famous Players-Lasky Corp., 267 Mass. 501, 519, 521. The issue concerning illegality is fairly raised by the defendant’s 8th, 9th and 10th requests, which were denied by the court. These in effect, call for a ruling as to the legal effects of the agreement in question. At this point it may be useful to state some of the governing principles of law relating to the issue of illegality raised by this appeal. It is well settled that where the essential facts are not in dispute, the question whether a contract is against public policy is a question of law under all the circumstances of the particular case. Adams v. East Boston Co., 236 Mass. 121, 127.
In determining whether the particular agreement being considered is against public policy, “it is of no consequence that eventually there does not appear to have been any actual harm to the public. The test is whether the underlying tendency of the contract under the conditions described was manifestly injurious to the public interest and welfare.’’ Adams v. East Boston Co., 236 Mass. 121, 128.
*551 There is a recognized distinction between provisions in statutes having for their objects the protection of the public and provisions which are revenue regulations. Where the protection of the public is the object of the provisions, a contract made in violation of them is always void. Favor v. Philbrick, 7 N. H. 326, 340.
It is true, that, “a contract will be treated as binding when it can reasonably be performed in such a way as to violate no law, and will not be regarded as void, because, among others not objectionable, one way is open for so executing it as to contravene some criminal statute.” But, it is also true that if the parties in agreement contemplated any unlawful use against public policy, it cannot be enforced. cf. Gaston v. Gordon, 208 Mass. 265, 268.
To engage in the business of selling intoxicating liquor without a license, at the time this agreement was made, was illegal, and contracts which called for participation in such an illegal enterprise are illegal and not enforceable. Baker v. Collins, 9 Allen, 253. Bartholomew v. McKinstry, 6 Allen, 570. G. L. Ch. 138 §23 as amended by acts 1933 Oh. 376 §2 (Extra Session).
It is well established that a party to an illegal contract will be left by the law where he finds himself. Boylston Bottling Co. v. O’Neil, 231 Mass. 498, 501.
A contract for a single consideration is wholly void if that single consideration is paid in part for an illegal act. Boylston Bottling Co. v. O’Neil, 231 Mass. 498, 501.
Turning to the agreement in question, we think it is clear that the agreement is entire and not separable. But one consideration is paid for all the articles sold, so that it is not possible to determine the amount of consideration paid for each. Neither is it possible to determine what was paid for the so-called sale of the licenses therein mentioned. Young & Conant Mfgr. Co. v. Wakefield, 121 Mass. 91, 92. Barlow Manufacturing Co. v. Stone, 200 Mass. 158,160.
*552 Applying the principles stated to the facts of the case reported, we are of the opinion that the agreement under consideration is against public policy and therefore illegal and void. The essential facts which bear on the issue of illegality do not appear to be in dispute. There is no question but that the agreement before the court was duly entered into between the parties, and that the defendant carried on the business sold to him, under cover of the licenses referred to in it. It clearly appears that the- plaintiff’s assignor purported to sell and the defendant to buy the “licenses” and the “business” as a going concern, and that it was intended by the parties to the agreement that the business was to be carried on until January 1st, 1936 by the defendant as owner under cover of the licenses mentioned. Under the terms of the agreement, what was being sold, apart from the chattels, named, was the “business, including good will (of the) restaurant and malt beverage business;” and “all licenses, which were to stand in the name of Casale until January 1, 1936”. The term “business”' is a word of large and indefinite import. “It embraces everything about which a person can be employed. ’ ’ It is “that which occupies the time, attention and labor of men for the purpose of livelihood or profit.” 1 Bouvier Law Dictionary, 406.
Licenses are not contracts, but rather, “are in the nature of permissions to carry on a business.” Sullivan v. Borden, 163 Mass. 470, 471.
They are usually, “mere police regulations intended to regulate trade, prevent injurious practices, and promote the order and welfare of the community.” Calder v. Kurby, 5 Gray, 597, 598; and this is particularly true of licenses authorizing the sale of intoxicating liquor. Emery v. Lowell, 127 Mass. 138, cf. Newton v. Joyce, 166 Mass. 83, Lowell v. Archambault, 189 Mass. 70, 71, and while it is true that *553 whatever a licensee may do for himself he may do through his hired agent or servant; Com. v. Radocchia, 205 Mass. 455; yet, he cannot transfer his license to somebody else unless there is legislative sanction so to do; and he cannot lawfully permit the use of this license as a cover for one selling intoxicating liquor who is not his agent or servant. One who sells intoxicating liquor for his own account is not protected by a license granted to someone else to sell liquor on the same premises. In other words, the license is personal in its nature and is not capable of being transferred by the licensee, nor does the license furnish immunity from criminal prosecution to another who seeks to avail himself of its benefit as if it had been originally granted to him. Com. v. Lavery, 188 Mass. 13. cf. Acts 1933 Ch. 376, §23. (Extra Session).
We feel that the terms of the agreement and the reasonable inferences to be drawn therefrom, permit of no other reasonable conclusion but that it was the intention of the parties that the “business” and the “licenses” were to be transferred to the defendant, and that the defendant was to operate the business until January 1st, 1936, under cover of licenses which were to stand in the name of the plaintiff’s assignor. Such an agreement is against public policy and void. The order therefore is,—
Finding for the plaintiffs vacated; judgment for the defendant.